IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

## JACKSON, APRIL TERM, 1917.

---

### Mrs. Lenoir Moseley *v.* Abe Goodman *et al.*

#### (*Jackson,* April Term, 1917.)

1. **WITNESSES. Impeachment. Use of testimony.**
   Where a witness' testimony on a material point was contradicted by impeaching testimony of his statements made to witness at another time, such statements were available only for impeachment and not as affirmative evidence. (*Post, pp. 9, 10.*)

   Case cited and approved: State ex rel. v. Goodman, 133 Tenn., 375.

2. **WILLS. Construction. Designation of beneficiaries.**
   Where testator knew a Mrs. T., but always called her Mrs. M., the mere fact that he devised property to Mrs. M., plus evidence that a Mrs. M. existed whose legal name was such, did not satisfy the language of the will so as to preclude admission

of testimony that testator' always called another person Mrs. M., to raise a latent ambiguity. .(*Post, pp.* 10-12.)

Case cited and distinguished: Ayres v. Weed, 16 Conn., 290.

3. **WILLS. Construction. Designation of beneficiaries.**
Although there was no evidence that a claimant was generally known as Mrs. M., it was sufficient to show the testator's meaning if there was evidence that he always called a certain person Mrs. M. (*Post, pp.* 12, 13.)

Case cited and distinguished: Coon v. McNeally, 254 Ill. 39.

4. **WILLS. Construction. Designation of beneficiaries.**

A devise to a person by any name, however different the name used in the will from the true name of the person, is good, provided it is shown that the name used was one by which the testator was accustomed to designate the person. (*Post, pp.* 13, 14.)

Cases cited and approved: Siegley v. Simpson, 47 L. R. A. (N. S.), 523; Chambers v. Watson, 56 Iowa, 676; Lee v. Pain, 4 Hare, 251.

5. **WILLS. Construction. Designation of beneficiaries.**
Persons entitled to a bequest given under nicknames, by which the testator habitually designated them, by extrinsic evidence may establish this fact, and upon so doing are entitled to the legacy. (*Post, pp.* 14, 15.)

Cases cited and approved: Beatty v. Corey Universalist Society, 39 N. J. Eq., 452; Hockensmith v. Slusher, 26 Mo., 237; Parsons v. Parsons, 1 Ves. Jr., 266; Tilton v. American Bible Society, 60 N. H., 377; Wood v. Hammond, 16 R. I., 98; Ward v. Epsy, 25 Tenn., 447; Ferguson v. Mason, 34 Tenn., 618; Delmare v. Robello, 1 Ves. Jr., 415; Holmes v. Custance, 12 Ves. Jr., 279.

6. **WILLS. Construction. Particular words.**
When the ordinary words of the English language are used in a will, they must be held to bear the customary meaning attached to them, unless a different sense can be obtained from the context, and it is not permissible to go outside of the will

Moseley v. Goodman.

and show that the testator was accustomed to attach a meaning to these words peculiar to himself.  (*Post, pp.* 15, 16.)

**7. WILLS.  Construction.   Designation of beneficiaries.**

A designation of a beneficiary as Mrs. M. itself requires the production of parol evidence to identify the legatee, and evidence that the testator was accustomed to call a certain person Mrs. M. is sufficient to raise the issue whether such person was intended or another.  (*Post, pp.* 16-18.)

**8. WILLS.  Construction.   Designation of beneficiaries.**

Where testator devised property to Mrs. M. and to Mrs. M.'s housekeeper, the mere fact that one whose legal name was Mrs. M. had a housekeeper did not foreclose inquiry whether the testator meant another person, whom he always called Mrs. M., to whom and to whose housekeeper he was indebted for many kindnesses.  (*Post, p.* 18.)

**9. WILLS.   Construction.    Designation of beneficiaries.   Evidence.**

Evidence *held* sufficient to show that by a legacy to Mrs. M. testator intended a Mrs. T., whom he always called by the former name.  (*Post, pp.* 18, 19.)

**10. APPEAL AND ERROR.   Scope of review.   Harmless error.**

Error in permitting a party to testify what an interested witness had said was her opinion as to the other party's right to recover did not require reversal, in view of Pub. Acts 1911, chapter 32, providing that no judgment shall be reversed for error unless it materially affected the result.  (*Post, p.* 19.)

Acts cited and construed: Acts 1911, ch. 32.

**11. WILLS.   Construction.    Burden of proof.**

One bringing suit to establish her right under a will has the burden of proving that she is the legatee intended.  (*Post, pp.* 19, 20.)

**12. APPEAL AND ERROR.   Scope of review.   Harmless error.**

Error in failing to state the plaintiff's theory of her case as clearly as possible is not ground for reversal, if it did not affect the result of the trial in view of Pub. Acts 1911, chapter 32.  (*Post, p.* 20.)

FROM. SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —FRANCIS FENTRESS, Chancellor.

CARUTHERS EWING, L. L. PEARSON and WM. H. FITZHUGH, for appellant.

J. H. POSTON, JR., and HENRY CRAFT, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

E. J. Halley died on October 19, 1910, leaving the following will:

"I, E. J. Halley, of a sound mind, will make this my last will and testament. I bequeath to the following people mound set of the names, E. O. Kolley, $500, Mr. R. G. Ramsey, $500, Miss Elizabeth Berry $500. I give to A. Goodman and Armstrong $10,000 a piece, Ed. Hurlburt $5000, Jack Brennan $5000, George Becktall $20,000, Mrs. Moseley $20,000, Mrs. Moseley's housekeeper $20,000, W. M. Palmer $20,000. Mrs. Mergle, Sr., $20,000, Ed. Mergle, $20,000, Theadore Mergle $10,000, the balance of my real estate I give to the St. Peter's Orphan Asylum.

E. J. HALLEY."

The controversy arises over the legacy: "Mrs. Moseley $20,000, Mrs. Moseley's housekeeper $20,-000." That is to say, while the legacy to Mrs. Moseley is the only one directly involved here, it is necessary to consider the legacy to the housekeeper in connction with it, so far as the word "housekeeper" is descriptive of the Mrs. Moseley intended, as the one who had a housekeeper.

The validity of this will was determined in the case of *State ex rel.* v. *Goodman et al.,* 133 Tenn., 375, 391-393, 412, 181 S. W., 312. In that case it was held, under the proof therein introduced, that the defendant Mrs. Lillian Trimble was the person intended by the name Mrs. Moseley. The question in that case, with respect to this particular matter, was whether the will was void for vagueness, it not appearing upon the face of the will what particular Mrs. Moseley was intended. It was shown in that case that the testator was accustomed to address Mrs. Trimble as Mrs. Moseley, that she was therefore the person he intended, and so the will was saved from uncertainty. Mrs. Lenoir Moseley, the complainant in the presen' case, however, was not a party to that suit. Soon after the death of Halley she notified the administrator that she claimed the legacy. Notwithstanding this fact, however, she did not cause herself to be made a party to the suit in which the validity of the will was tested. She stood to one side, and permitted Mrs. Trimble to make the defense and save the

will on the grounds stated. Now, after all this, she comes forward and seeks to claim the fruits of the victory obtained, as stated, by Mrs. Trimble. It may well be questioned whether she is not estopped on the facts recited, since to permit her now to claim the legacy, which was saved only through proof that Mrs. Trimble was the person intended, would enable her to deny the basis on which the validity of the will was rested, with her knowledge and consent at the time. Such conduct seems not only disingenuous, but inconsistent. Having stood by inactive, pending the former litigation, with knowledge of what was transpiring, perhaps it might well be decided that she could not now change front. But we shall not put the case on this ground.

Mrs. Lenoir Moseley filed the present bill claiming this legacy. She made Mrs. Trimble a party defendant, setting forth the claim of the latter, and attacking the validity of that claim, insisting that she herself was the Mrs. Moseley intended, and that Mrs. Trimble was not and could not be such person. A jury was asked for, and the chancellor submitted the following issue or question: "Who was meant by the testator when he bequeathed $20,000 to 'Mrs. Moseley'?" The jury responded that the testator meant Mrs. Lillian E. Trimble. The chancellor pronounced a judgment on the verdict. From this an appeal was prayed to the court of civil appeals, and his judgment was there affirmed. The case was then

Moseley v. Goodman.

brought to this court by the complainant through the writ of certiorari.

The facts disclosed by the record, by the overwhelming weight of the evidence, are as follows:

The testator was for many years engaged with his mother in business on Main street, in the city of Memphis, in the sale of liquors, tobacco, and cigars. He and his mother bought, through a series of years, cigars from Mr. F. S. Trimble, the husband of Mrs. Lillian E. Trimble. Mr. Trimble was the city salesman for one R. L. Moseley, and, as such, for several years, sold cigars to testator and his mother. Testator generally addressed him as "Moseley," it seems, because he sold the Moseley cigars, and the Moseley sign was very prominently displayed at the front of the building where Trimble worked. It does not appear that testator dealt personally with R. L. Moseley himself at all. Mrs. Trimble, during the same period, bought goods about once a month from testator and his mother, and the testator called her "Mrs. Moseley," and admired her character very greatly. He spoke of her to others as a fine woman. The mother of testator died about January, 1910, and he then fell into the habit of drinking, and became quite dissipated. He made a foreign tour with one Harper, he himself paying all the expenses. His mother had left him about $230,000. He claimed, when he came back, that he had spent $6,000 on this trip. He drank a great deal while he was traveling,

and came back in a bad state of health.  After his mother died, and before he started on the foreign tour, he engaged a room at an apartment house known as "The Monarch," which was owned, or leased, by Mr. Trimble.  Mrs. Trimble had charge of it as manager.  When testator started on his foreign tour he gave up his room, but immediately on his return he secured the same or another room at "The Monarch," Mrs. Trimble being still the manager.  He still drank heavily and was ill.  He stayed at "The Monarch" two or three weeks, and was then removed to the hospital, and died within a day or two thereafter, having made the will Monday night and died Wednesday morning.

Mrs. Trimble, at the time testator returned to "The Monarch," had, as her housekeeper for that institution, Mrs. Anna Lang.  Both Mrs. Trimble and Mrs. Lang gave the testator very devoted attention, such attention as a sick man needs, serving night and day.  Mrs. Trimble brought him milk and soup and other delicacies.  Mrs. Lang ministered to him very assiduously and with great kindness in the way of sponging him and doing other things for his comfort.  He appeared to be very grateful for these attentions.  He generally called Mrs. Trimble Mrs. Moseley, though occasionally he called her Mrs. Trimble.  There is evidence to the effect that he always called her Mrs. Moseley.  The witness Rothschild deposed to this fact.  He testified that on one

occasion, when he was in the room of testator, the latter was talking about Mrs. Moseley quite a good deal, and he asked him who he was referring to, and he said: "Mrs. Trimble; I always call her Mrs. Moseley." He always spoke of Mrs. Lang as "housekeeper," or "the good woman."

It does not appear that he knew Mrs. Lenoir Moseley. It does appear that he knew her husband, R. L. Moseley. Mrs. Moseley herself testified that she did not know Mr. Halley at all. She endeavors to connect herself with the legacy not only by the fact that her name was Mrs. Moseley, but by the further fact that her sister, Miss Jessie Dunlap, was her housekeeper at her private home. It is in proof that the testator incidentally met Miss Dunlap on one occasion at "The Monarch." Both Mrs. Trimble and Miss Dunlap say that the meeting was in one of the halls of "The Monarch." Both agree that Mrs. Trimble introduced Miss Dunlap to Mr. Halley. Mrs. Trimble says that she introduced Miss Dunlap as her little friend, "sister of Mrs. R. L. Moseley." Miss Dunlap says the introduction was in this form, "Mr. Halley, I want you to meet the best friend I have in the world, a sister of Mrs. Moseley, old Bim Moseley's wife;" and he replied, "I have known Bim Moseley for twenty years." It does not appear that Halley ever saw Miss Dunlap again. Likewise there is no legal evidence that Halley knew that Miss Dunlap was housekeeper to her sister, the complain-

ant, Mrs. Lenoir Moseley. There was evidence introduced for the purpose of contradicting the witness F. S. Trimble, to the effect that he (Trimble) had told Miss Dunlap that he had informed Halley that Miss Dunlap was her sister's housekeeper, and that she had been very much disappointed in not receiving a legacy from her aunt. Mr. Trimble was asked on the witness stand if he did not tell Miss Dunlap that he had made these statements to Halley. He denied that he had made any such statements. Miss Dunlap was then introduced, and she testified that he had made these statements to her. The case has been argued as if such evidence, introduced for contradiction, was affirmative evidence of the fact; but, of course, it cannot be so considered. It would only go to the credibility of F. S. Trimble. Miss Dunlap swears that he made a statement to her that he had said thus and thus to Halley, and he denied that he made these statements. This, of course, does not serve as proof of the fact that the information referred to was conveyed to Halley; so it remains there is no real evidence that Halley knew that Miss Dunlap was housekeeper to the complainant. However, in our further treatment of the case we shall assume that he did have such information.

If the testimony was competent to the effect that the testator always or generally spoke of Mrs. Trimble as Mrs. Moseley, or generally called her Mrs. Moseley, there was ample evidence to sustain

the verdict, and that point is not questioned. How-
ever, it is said that the evidence was not competent;
that when it was proven that there was in existence
a Mrs. Moseley, whose legal name was such, this sat-
isfied the language of the will, and the testimony
above referred to concerning Mrs. Trimble's being
called Mrs. Moseley by the testator could not be used
to raise a latent ambiguity. We are of the opinion
that this view is erroneous.

The general principle is well stated in *Ayres* v.
*Weed,* 16 Conn., 290, as follows:

"If a person is commonly called and known by a
name which does not properly belong to him, but
which properly belongs to another, it cannot with
propriety be said that that name, although a false
one, is not in fact descriptive of the former, unless
we go so as to say that a person is not described
by the name by which he is known. That would
clearly be a case where two different persons would be
described by the same name, and where, therefore,
parol evidence might be introduced to remove the
doubt as to which of them was intended. That the
name given to a person as a nickname does not ren-
der it the less a description of him, although, indeed,
a less correct one, than if his true name were used;
and it is well settled that if a legacy is given, or a
devise made, to a person by his nickname, parol evi-
dence is admissible to show that the testator usually
called him by that name, in order to show that he was

intended; much more would it be admissible to show that he was generally known in the community by that name.''

Now, there is no evidence in this record that Mrs. Trimble was generally known by the name of Mrs. Moseley; but it was sufficient to indicate the meaning of the testator if it be shown, as it is shown here, that he was accustomed to call her by that name. In Roper on Legacies, vol. 1, p. 185, it is said:

''If when, upon opening wills, such bequests are found as 'to —— Jones, the son of —— Jones,' or '.to Mrs. B.,' and parol evidence is admitted to ascertain the persons intended by those ambiguous terms, it would seem a vain attempt to justify that admission upon the doctrine of latent ambiguity, when the ambiguity is patent upon the will. The principle upon which parol testimony is admitted in these cases is probably, in the first of them, a presumption of possible ignorance in the testator of the Christian name of the legatee, and in the second a similar presumption of his being in the habit of calling a person by the name of Mrs. B.; presumptions which, being raised upon the face of the will, may be confirmed and explained by extrinsic evidence. Upon these grounds the admission of parol evidence in these two instances will be consistent with the established doctrine of its admissibility to raise and remove latent ambiguities,'' etc.

In *Coon* v. *McNelly,* 254 Ill., 39, 98 N. E., 218, the bequest was, "To my grandchildren." The testator had no grandchildren, but his second wife had grandchildren. He always referred to and called them his grandchildren, and they called him "grandfather." The court held that it was proper to show by parol evidence that the testator meant his step-grandchildren. In *Mabank* v. *Brooks,* 1 Brown's Reports, 76, it appeared that the legatee was dead, to the knowledge of the testator, when the will was executed; hence the legacy was sought to be transmitted to Mabank's heirs at law. Lord Thurlow said:

"It is argued at the bar that evidence may be read to raise as well as to dissolve an ambiguity in a will; this is good law, for it must be raised by evidence. It has gone so far as to give the legacy to a certain person, where there was no such person in existence as was described in the will; as to John A. Style, where there was no such person, but the testator used to call a certain person John A. Style."

There is a collection of cases on the subject in a note to *Siegley* v. *Simpson,* 47 L. R. A. (N. S.), at page 523. Thus a devise to a person by any name, however different the name used in the will from the true name of the person, is good, provided it is shown that the name used was one by which the testator was accustomed to designate the person, and such showing may be made by parol proof. *Chambers* v. *Watson,* 56 Iowa, 676, 10 N. W., 239. To

show that a certain claimant was the beneficiary intended in a bequest to a person by a name which did not correctly designate any one in existence, parol evidence was held admissible to show that the testator was in the habit of calling claimant by the name used in the bequest. *Lee* v. *Pain,* 4 Hare, 251.

Persons entited to a bequest given under nicknames, by which the testator habitually designated them, by extrinsic evidence may establish this fact, and upon so doing are entitled to the legacy. *Beatty* v. *Corey Universalist Society,* 39 N. J. Eq., 452. Thus a bequest to Harrison H. may be shown by parol proof to have been intended for William H. a son-in-law of the testator, who was known and called by the name of Harrison H., there being no other person answering the description. *Hockensmith* v. *Slusher,* 26 Mo., 237. A bequest to Edward may be shown to have been intended for a person named Samuel by proof that the testator was in the habit of calling him Edward. *Parsons* v. *Parsons,* 1 Ves. Jr., 266. A devise to a person or society by the name by which he or it is known to the testator is a good devise to such person, although known to others by a different name. *Tilton* v. *American Bible Society,* 60 N. H., 377, 49 Am. Rep., 321. A bequest to "the nursery," where there is no existing society bearing that name, by extrinsic proof was shown to be intended for a society named "St. Mary's Orphanage," which had taken over the operation of a

society called "Providence Nursery," and generally referred to by the testator `as "the nursery" to which he had made contributions during his lifetime. *Wood* v. *Hammond*, 16 R. I., 98, 17 Atl., 324, 18 Atl., 198. Our own case of *Gass* v. *Ross,* 3 Sneed, 211, 215, 216, recognizes and approves the rule of identification by evidence of what the testator called a person or thing; as, for example, in that case evidence was considered for the purpose of showing what school district he had called "Gass' School District." But the case of *Ward* v. *Epsy,* 6 Humph., 447, is referred to as authority for the contention that evidence is incompetent which purports to show that the testator had in mind at the time he wrote his will a person other than the one fully described in the will. There can be no objection to this contention. In that case the legatee was pointed out by the description of "oldest daughter" of his son. There could be only one person who filled that description. Compare *Ferguson* v. *Mason,* 2 Sneed, 618; *Delmare* v. *Robello,* 1 Ves. Jr., 415; *Holmes* v. *Custance,* 12 Ves. Jr., 279. It was not the case of a name used by two different persons, opening a contest as to which one of these was meant by the testator when he used the name in his will to designate the donee of a legacy.

When, as in *Ward* v. *Epsy,* the ordinary words of the English language are used in a will, they must be held to bear the customary meaning attached to

them, unless a different sense can be obtained from the context. It is not permissible to go outside of the will, and show that the testator was accustomed to attach a meaning to these words peculiar to himself. If such evidence were permissible truly no will would be safe. But this comment has no bearing on the effort to apply a name when borne by two or more persons, and the endeavor is to ascertain to which of these the testator made reference, or which one he meant, when he used the name.

Now, it is of course true, within the authorities just referred to, that if the bequest had been made in terms to "Mrs. Lenoir Moseley," the fact that the testator was accustomed to call some other person "Mrs. Moseley" would not be sufficient to raise an ambiguity; but where the bequest was simply to "Mrs. Moseley," without any Christian name, that of itself required the introduction of parol evidence to identify the legatee; and under such circumstances we think evidence that the testator was accustomed to call a certain person "Mrs. Moseley" would be sufficient to raise the question whether she was intended or some other person whose real name was "Mrs. Moseley," the matter to be decided being the meaning which the term "Mrs. Moseley" bore in the testator's mind when he used that expression in the will. It would not do to say that because some person was found whose name was "Mrs. Moseley" fur-

ther inquiry would be precluded. The name "Mrs. Moseley" would not make the matter more certain than had already appeared upon the face of the will itself, nor would proof of the Christian name "Lenoir" add anything to it, since it does not appear that such Christian name was used in the will or known to the testator. So there were two competing names, Mrs. Moseley bearing that name as her lawful cognomen, and Mrs. Moseley (really Mrs. Trimble) bearing that name because so called by the testator. To determine which one was entitled, additional evidence was properly introduced. It has already been mentioned that the testator had no acquaintanceship with the complainant, but knew Mrs. Trimble well, and had given her the name "Mrs. Moseley," by which name he constantly addressed her or spoke of her, and to whom he was indebted, as the testimony shows, for many kindnesses, and towards whom he had expressed a deep sense of gratitude. Then there is the matter of description, that she had the housekeeper to whom he gave $20,000, to which housekeeper, Mrs. Lang, he was also indebted for many kindnesses, and towards whom he had expressed gratitude. This connection with the housekeeper is a descriptive mark furnishing an additional indication of the testator's meaning when he gave the legacy of $20,000 to "Mrs. Moseley." It is insisted that the complainant also had a housekeeper, her sister Miss Dunlap, and so, the descriptive mark, found in pos-

sessing a housekeeper applying to her, the language of the will is satisfied, the name "Mrs. Moseley" and the possession of a housekeeper concurring in her, and that it was therefore improper to proceed further with parol evidence, since from this concurrence of evidence the matter was made certain, and the ownership of the legacy secure, in the complainant.

This, in our judgment, is a mistaken view. The name "Mrs. Moseley," without a praenomen, or Christian name, or other specific designation or description in the will, was, as we have already pointed out, so general as to need parol evidence to place the name on some individual, or point out some individual as the one meant by the testator. Going, then, to the parol evidence with the same name borne by two competing persons (one being the name by grace of the testator), the solution turns on a comparison of the circumstances presented in favor of each. The facts which we have stated show a weighty preponderance in favor of the latter, even if it be conceded that the complainant has any lawful evidence to show that she had a "housekeeper."

Counsel for the complainant insist that if the court should hold that Mrs. Trimble was the person intended, and so should affirm the judgment of the chancellor and the court of civil appeals decreeing the legacy to her, that would be nothing short of striking the name of Mrs. Moseley from the will, and inserting in its place that of Mrs. Trimble, and so

writing a new will for the testator. This argument is clearly fallacious. We look to the evidence merely to ascertain what individual the testator had in mind when he wrote the term "Mrs. Moseley." The evidence recited, if competent, must convince any one, as it did the jury, that he meant Mrs. Trimble, because "Mrs. Moseley" was the name by which he called her, and because of his long acquaintanceship with her, the esteem in which he had long held her, and the kindnesses on account of which he was indebted to her, and because of his associating with her the person whom he always called "the housekeeper," Mrs. Anna Lang.

It is insisted for the complainant that the trial judge erred in permitting Mrs. Trimble to give in evidence the opinion which Miss Dunlap had expressed to her concerning the complainant's right to recover, and the complainant's belief herself that she was not entitled to anything. Of course, this was erroneous; but there could be no reversal for it under the act of 1911, chapter 32, because we are convinced that this error had no effect upon the verdict of the jury.

It is insisted that there was error in the chancellor's instruction as to the burden of proof. We think there was no ground of reversal in this. Certainly the burden of proof was upon the complainant to show that she was the Mrs. Moseley intended, and she could not be injured by the chancellor's imposing

upon Mrs. Trimble the burden likewise of showing that she was the person intended.

It is further insisted that the chancellor committed error in not stating the plaintiff's theory of her case. It was not stated as fully as it ought to have been stated, yet the theory was stated in a general way. Under the act of 1911 we do not think there should be a reversal for an error of this kind. We do not believe it affected the verdict.

It results there was no reversible error in the judgment of the trial court, nor in that of the court of civil appeals, in affirming that judgment.

Judgment will therefore be entered here affirming the judgment of the court of civil appeals, with costs.