Horace A. Coon *et al.* Defendants in Error, *vs.* John McNelly *et al.*—(Albert H. Johnson, Plaintiff in Error.)

*Opinion filed April 18, 1912.*

1. Wills—*circumstances surrounding testator may be considered.* In ascertaining the intention of the testator, the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument and the motives which might reasonably be supposed to have influenced the testator in the disposition of his property may be considered.

2. Same—*rule excluding evidence to explain will does not extend to circumstances surrounding testator.* The rule concerning the exclusion of evidence offered to explain written instruments does not extend to the exclusion of the circumstances in which a testator was placed or the collateral facts surrounding him at the time the will was executed.

3. Same—*when the word "grandchildren" will be held to mean "step-grandchildren."* A devise to the testator's "grandchildren" will be held to mean the grandchildren of the testator's second wife, where it appears that the testator left no children or grandchildren of his own but that he always referred to his second wife's grandchildren as his grandchildren.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. W. E. HADLEY, Judge, presiding.

JOHNSON, JOHNSON & W. L. COLEY, for plaintiff in error.

CHARLES MORRISON, and A. C. BOLLINGER, for defendants in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Certain of the defendants in error filed a bill in the circuit court of Monroe county against other defendants in error and the plaintiff in error, Albert H. Johnson, asking for the partition of lands devised under the will of E. L. Morrison, deceased. From the decree construing that will and ordering the partition this writ of error was sued out.

The cause was heard by the circuit court on an agreed stipulation of facts. Morrison died testate on October 20, 1910. His will, after providing for the payment of just debts and funeral expenses and for certain specific legacies, reads (clause 7): "I give and bequeath all the remainder of my estate, both real and personal, including lands, notes and moneys, to my grandchildren." Morrison left no widow, father, mother, sister, child or children or descendants of any deceased sister, brother or child, but left as his only surviving heir-at-law the plaintiff in error, Johnson, who was a brother of the half blood. Some years before his death Morrison married a widow, Mrs. Susan Mattingly, who had by a former marriage three children. Mrs. Morrison predeceased her husband. Her three children were all married at the time of the testator's death. One had one child, another two children and another nine, all of said twelve children being grandchildren of Mrs. Morrison. While he had no grandchildren of his own, Morrison had at all times since his marriage to Mrs. Mattingly

referred to her grandchildren as his grandchildren. After his marriage with Mrs. Mattingly her three children, who were then twelve, fourteen and sixteen years old, respectively, lived for several years with them as members of the family. The grandchildren of Mrs. Morrison had always referred to and called the testator "grandfather." At the time the will was executed the testator did not know whether the half brother, plaintiff in error, was living, as clause 4 of the will reads: "I give and bequeath to my half brother, Albert H. Johnson, one thousand dollars ($1000.) I not knowing where he is, I order my executor to put an advertisement in the *St. Louis Globe-Democrat* and *Post-Dispatch* daily for one week, and if he is not found in three years the said thousand dollars is to go to John Mattingly.". On these facts the chancellor decreed that under clause 7 of the will the testator left the remainder of his property to the twelve grandchildren of his wife.

It is contended by plaintiff in error that extrinsic evidence was improperly admitted to show what persons testator meant by "my grandchildren," in said clause; that as he had no grandchildren the property purported to be devised by said clause 7 is intestate and went by descent to plaintiff in error, as testator's sole heir-at-law; that in this will there is a want of persons to take under the clause in question.

In construing wills the paramount rule is to ascertain the intention of the testator and give it effect if not prohibited by law. (*Bradsby* v. *Wallace,* 202 Ill. 239.) In seeking this intention the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument and the motives which might reasonably be supposed to influence the testator in the disposition of his property may be considered. (*Wardner* v. *Baptist Memorial Board,* 232 Ill. 606.) The rule as to the exclusion of evidence offered to explain written instruments does not exclude the circumstances in which testator was placed or the

collateral facts surrounding him at the time the will was executed. (1 Greenleaf on Evidence, sec. 297.) "The law is not so unreasonable as to deny to the reader of any instrument the same light which the writer enjoyed." Wigram on Wills, (2d Am. ed.) 161; *Decker* v. *Decker,* 121 Ill. 341.

For the purpose of determining the object of a testator's bounty a court may inquire into every material fact relating to the person who claims to be interested under the will, in order to identify the person intended by the testator as a legatee. (Wigram on Wills,—2d ed.—prop. 5, p. 142.) This learned author says: "The necessary consequence, in such a case, of bringing the words of the will into contact with the circumstances to which they refer must be to determine the identity of the person intended." (2 Wigram on Wills, p. 155, and cases cited.) If the word "child," "children," "grandchildren," "son" or "family" is used in a will, "parol evidence is admissible of any extrinsic circumstances tending to show what person or persons or what things were intended by the party, or to ascertain his meaning in any other respect." (1 Lewis' Greenleaf on Evidence, sec. 288.) A nickname has been held a sufficient description of the object of a testator's bounty, it being proved that the testator was in the habit of calling the legatee by such name. So, also, a name gained by reputation, though not strictly appropriate, has been held a sufficient description of the person intended. (Wigram on Wills,— 2d ed.—prop. 5, p. 144.)

Tested by the principles of law laid down in these authorities and interpreting the will in the light of the surrounding circumstances at the time it was executed, manifestly the testator meant by the words "my grandchildren" the grandchildren of his wife.

The decree of the circuit court will be affirmed.

*Decree affirmed.*