(No. 14388.—Reversed and remanded.)

Mary Jeanette McNamara *et al.* Appellees, *vs.* John Hamilton McNamara, Appellant.

*Opinion filed April 19, 1922—Rehearing denied June 7, 1922.*

1. Adoption—*status of adopted child is fixed by law of domicile—descent.* The rights, duties and capacities of an adopting parent and of the adopted child are fixed by the law of the domicile, which not only establishes the personal relation but controls the descent of personal property of one dying intestate, and under the law of comity and the full faith and credit clause of the Federal constitution such status will be recognized in other jurisdictions, but the law of the jurisdiction where real estate is located will determine the descent of such property.

2. Conflict of laws—*decision of highest court construing law of its State is conclusive in other jurisdictions.* The decision of the highest court of one State construing the law of that State is conclusive in the courts of every other State and in the Supreme Court of the United States.

3. Descent—*child made legitimate by adoption in another State may inherit real property in Illinois.* An illegitimate child made legitimate by adoption, in accordance with the laws of the State of his domicile as construed by the highest court of that State, must be regarded in Illinois as the heir of the adopting parent and entitled to inherit real property in this State.

4. Estoppel by verdict—*doctrine of estoppel by verdict stated.* The judicial determination of a fact involved in litigation is conclusive in a subsequent suit between substantially the same parties when such fact is again involved.

Farmer, J., dissenting.

Appeal from the Circuit Court of Stephenson county; the Hon. Franklin J. Stransky, Judge, presiding.

Robert P. Eckert, guardian *ad litem,* and Douglas Pattison, for appellant.

A. J. Clarity, and R. R. Tiffany, (Mary Jeanette McNamara, *pro se,*) for appellees.

Mr. Justice Cartwright delivered the opinion of the court:

John H. McNamara, of St. Paul, Minnesota, was the owner of real estate in Freeport, in Stephenson county, in this State. He died on or about March 30, 1914, intestate, leaving Anna E. McNamara, his widow, Mary Jeanette McNamara and Margaret J. McNamara, (now Margaret J. Thomas,) his daughters, and John A. McNamara, his son, his only heirs-at-law. John A. McNamara lived in California and died at Sunland, in Los Angeles county, on or about May 10, 1916, intestate, and he had never been married. Mary Jeanette McNamara, of Los Angeles, California, filed her bill in this case in the circuit court of Stephenson county, alleging that by the death of her father, John H. McNamara, she and her sister, Margaret, and her brother, John, became seized in fee, as tenants in common, of the premises in Freeport by descent, subject to the dower of their mother, the widow, and that by the death of John A. McNamara intestate his undivided one-third descended in equal parts to the complainant and her sister, Margaret, subject to the dower of their mother. The bill alleged that John Hamilton Bettencorte, also described as John Hamilton McNamara, a minor, claimed to have some right, title or interest in the real estate as heir-at-law of John A. McNamara, but denied that he had such interest. The bill prayed for partition subject to dower, and made the minor and various tenants of the property defendants. A guardian *ad litem* was appointed for the infant defendant named in the bill as John Hamilton Bettencorte and also known as John Hamilton McNamara. The guardian *ad litem* filed

an answer and followed the answer with a cross-bill, alleging the residence of John A. McNamara in California and that there was a statute of that State providing for the adoption of children, which was set forth in the cross-bill. It was further alleged that under and by virtue of that statute John Hamilton McNamara, an illegitimate child of John A. McNamara, born on October 24, 1914, was adopted by his father, John A. McNamara, and by the law of California was deemed for all purposes legitimate from the time of his birth; that the question of such adoption and the status of John Hamilton McNamara as heir-at-law had been litigated and finally and conclusively settled in the courts of California; that the complainant, Mary Jeanette McNamara, and Margaret J. McNamara, were parties to that litigation, in which it was decided that John Hamilton McNamara had been made legitimate by adoption by his father, John A. McNamara, and that by virtue of such adoption he was the owner in fee simple of an undivided one-third of the real estate, subject to the dower of the widow of John H. McNamara. The original bill was amended by averring that the complainant in the cross-bill was born to Rosalie Nettie Bettencorte on October 24, 1914, while she was the lawful wife of Antoine F. Bettencorte, and that he was not the son by adoption, or otherwise, of John A. McNamara or related in any way to him. The cross-bill was answered, and upon a hearing the chancellor entered a decree finding the title to the property as alleged in the original bill as amended, finding that John Hamilton McNamara had no right, title or interest in or to the real estate and ordering partition and assignment of dower. From that decree the minor, by the guardian *ad litem*, has appealed to this court.

The following facts were proved on the hearing: A chapter entitled "Children by adoption" is a part of the civil code of California, and consists of section 221 to section 230, inclusive. Section 221 provides that any minor

303–13

may be adopted by any adult person in the cases and subject to the rules prescribed in the chapter.   Subsequent sections contain various provisions concerning adoption and proceedings before a judge for that purpose and declare the effect of adoption.   The concluding section is as follows:

"Sec. 230.   *Adoption of illegitimate child.*—The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.   The foregoing provisions of this chapter do not apply to this adoption."

After the death of John A. McNamara, Rosalie Nettie Bettencorte, under the name of Rosalie McNamara, became administratrix of his estate and guardian of the minor, John Hamilton McNamara.   She filed a petition in the superior court of Los Angeles county for a family allowance for her as widow and John Hamilton McNamara as minor child of the deceased.   On that petition the court allowed $75 per month out of the estate of John A. McNamara.   Mary Jeanette McNamara filed in the superior court her petition to revoke the letters of administration and to set aside the order for a family allowance on the ground that the administratrix was not the widow of John A. McNamara and John Hamilton McNamara was not his minor child, and that the petitioner and her sister, Margaret J. McNamara, were the next of kin of the deceased and entitled to administration.   The petition alleged that at all times after July 29, 1913, the administratrix was the lawful wife of Antoine F. Bettencorte.   The administratrix answered, denying the charge that John Hamilton McNamara was not the son of John A. McNamara; denying that at any time after July 29, 1913, she lived with Bettencorte as his wife; alleging that John A. McNamara in his lifetime publicly acknowledged John Hamilton McNamara

as his own child, received him into his family and otherwise treated him as his legitimate child, and that said child was thereby adopted by John A. McNamara as his legitimate child and thereupon became such legitimate child from the time of his birth, as provided by the statute. The administratrix petitioned for a partial distribution of the estate before final settlement, and Mary Jeanette and Margaret J. McNamara demurred to the petition. The petition was amended and Mary Jeanette and Margaret J. McNamara answered it, denying that John A. McNamara had adopted the child as alleged and that he thereby became legitimate. The superior court denied the petition to revoke the letters of administration, ordered partial distribution, and vacated without prejudice the order for $75 per month for a family allowance. Mary Jeanette and Margaret J. McNamara appealed to the Supreme Court of California, where the order of the superior court was affirmed. *In re McNamara's Estate*, 181 Cal. 82.

The court found the following facts: That John A. McNamara died on or about May 10, 1916, at Sunland, Los Angeles county, California, a resident of said county; that John Hamilton McNamara was born on October 24, 1914, at Mountain View, Santa Clara county, California; that John A. McNamara was the father of John Hamilton McNamara and Rosalie Nettie Bettencorte was his mother and his guardian; that Rosalie Nettie Bettencorte was married to Antoine F. Bettencorte on or about July 29, 1913, and they lived together as husband and wife at Mountain View until December 24, 1913, when they separated and did not thereafter live or cohabit together as husband and wife; that on October 25, 1915, in the superior court of Santa Clara county, in a suit by Bettencorte against Rosalie Nettie Bettencorte for divorce, an interlocutory decree for divorce was entered, which was made final on or about November 23, 1916; that from about December 24, 1913, John A. McNamara and Rosalie Nettie Bettencorte lived

and cohabited together as husband and wife except during a few very brief periods stated in the findings; that during the existence of their relations he maintained her, introduced her at various times as his wife, received John Hamilton McNamara into the family a week after his birth, and the child at all times resided in the family and was provided and cared for and otherwise treated as his legitimate child, and that John A. McNamara in his lifetime publicly acknowledged John Hamilton McNamara as his own child and provided and cared for him as a member of his family up to the date of the death of John A. McNamara; that from and after December 24, 1913, Bettencorte had no intercourse or communication of any kind with Rosalie Nettie Bettencorte and was absent and separated from her at the period during which John Hamilton McNamara must in the course of nature have been begotten.

The adoption of children was unknown to the common law but was known and recognized by the civil law. The principle has been adopted in most of the States by statute, and the rights, duties and capacities of the adopting parent and adopted child are determined by the provisions of the several statutes. Such rights and duties depend upon the status, (2 Austin on Jurisprudence, 710,) and such status is fixed by the law of the domicile, which not only establishes the personal relation but controls the descent of personal property of one dying intestate, while the law of the jurisdiction where real estate is located will determine the descent of such property. It will therefore be seen that there are two questions to be considered: First, whether the status of John Hamilton McNamara as a legitimate child of John A. McNamara has been fixed and established under the law of California, which was the domicile of the parties; and second, whether this State will recognize that status, which by our law controlling the descent of real estate would entitle him to the property of John A. McNamara as his heir-at-law. These separate

questions must be answered in the affirmative to entitle John
Hamilton McNamara to the real estate of his father, sub-
ject to the dower of the widow.

The first question has been finally settled, both as one
of fact and law, by the decision of the Supreme Court of
California in the litigation in that State involving the status
of John Hamilton McNamara on these grounds: The liti-
gation was between the same parties as in this contro-
versy, and the question of the status of John Hamilton Mc-
Namara was the subject of the litigation. Where a fact
is once determined the finding is conclusive as to that fact
in a subsequent suit between substantially the same parties.
(*Hanna* v. *Read,* 102 Ill. 596; *People* v. *Hill,* 182 id. 425;
*Hanna* v. *Drovers' Nat. Bank,* 194 id. 252; *In re Stahl,*
227 id. 529; *Chicago Title and Trust Co.* v. *Moody,* 233
id. 634; *MacDonald* v. *Dexter,* 234 id. 517.) The rule
was declared and applied as to a foreign decree of adop-
tion in *VanMatre* v. *Sankey,* 148 Ill. 536. As a question
of law, the decision of the highest court of California con-
struing the law of that State is conclusive in the courts of
every other State and in the Supreme Court of the United
States. (*Hood* v. *McGehee,* 237 U. S. 611.) The Supreme
Court of California said that section 230 provides for legiti-
mation rather than for adoption in the ordinary sense, but
the code provided for legitimation by adoption, and the
evidence was sufficient to sustain a finding on the issue as
to adoption. The status of John Hamilton McNamara as
legitimate from his birth, with all the rights incident to
that status in California, is beyond dispute.

The most comprehensive review of the origin and his-
tory of adoption and the decisions relating to the status and
capacity for inheritance of an adopted child is to be found
in the opinion of Mr. Chief Justice Gray in *Ross* v. *Ross,*
129 Mass. 243; 4 Am. R. C. 1382. In that case there had
been an adoption in Pennsylvania and the adopting parent
afterward removed to Massachusetts, and the question was

whether the adopted child could inherit real estate in Massachusetts upon the adopting parent dying there intestate. In *Keegan* v. *Geraghty*, 101 Ill. 26, the court quoted from *Ross* v. *Ross, supra,* as follows: "It is a general principle that the status or condition of a person, the relation in which he stands to another person and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicile, and that this status and capacity are to be recognized and upheld in every other State so far as they are not inconsistent with its own laws and policy." The case was again cited as authority in *Ryan* v. *Foreman,* 262 Ill. 175.

In *VanMatre* v. *Sankey, supra,* Caroline C. Sankey was adopted by a proceeding in a court of common pleas of Lycoming county, Pennsylvania, by Samuel Sankey. It was contended that the statute of Pennsylvania was not complied with, but it was held that the determination of the Pennsylvania court, the jurisdictional facts being stated in the petition, was conclusive of its own jurisdiction and of the status. It was held that upon the death of Samuel Sankey without other children his estate in this State descended to Caroline C. Sankey, the adopted child, and that she was capable of inheriting from him in this State in all respects as if she were his own child born in lawful wedlock.

In *Ross* v. *Ross, supra,* the court commented upon the law of adoption of Pennsylvania, but the decision was not upon the ground that the statutes were the same. On the contrary, the court pointed out differences in regard to the consent of the wife of the adopting father and to the inheritance of estates limited to heirs of the body or inheritance from the kindred or through the children of the father, and it was said that none of these things were material. Our statute is copied from the Massachusetts statute and contains the same limitations as to the adopted child taking property from the lineal or collateral kindred of the adopting parent by the right of representation.

The recognition of adoption in another State rests both upon the doctrine of comity, which is essential to the maintenance of proper relations between the States, and article 4 of the Federal constitution, providing that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. The rule in both cases is subject to the qualifications that one State will not recognize a status contrary to its own laws or public policy and that the descent of real estate is governed by the law of the situs. The court in *Keegan* v. *Geraghty, supra,* recognized and gave full effect to the adoption of Mary Ann Keegan in Wisconsin, but necessarily held that the statute of this State controlled as to inheriting land in this State. The statute of Wisconsin made an adopted child, for the purpose of inheritance and all legal consequences incident to the status of parent and child, the same as if born in lawful wedlock, limiting that right only by a provision that the child should not be capable of taking property expressly limited to the heirs of the body or bodies of the petitioner or petitioners. Our statute added to that condition the further limitation that the adopted child should not be capable of taking property from the lineal or collateral kindred of such parents by right of representation. The court recognized fully that the adopted child had every right in this State that a child adopted here under our law would have had, but held that under our statute the adopted child could not inherit from her half-sister, Mary Gertrude Keegan, who was sole heir of her father according to our Statute of Descent. That decision was carefully explained and the basis of it made clear in *Van-Matre* v. *Sankey, supra,* and it can have no influence whatever on the question whether John Hamilton McNamara can inherit under our Statute of Descent from John A. McNamara, the adopting parent.

As before stated, neither the rule of comity nor the full faith and credit clause of the Federal constitution requires

the courts of one State, in deciding upon the descent of real estate, to recognize and give force and effect to the statute of another State contrary to its own law. (*Clarke* v. *Clarke,* 178 U. S. 186; *Olmsted* v. *Olmsted,* 216 id. 386.) The case of *Hood* v. *McGehee, supra,* came within the rule under the Federal constitution. The children of the confederate General Hood had been adopted in Louisiana by George T. McGehee, and the Statute of Descent of Alabama excluded children adopted by proceedings in other States. It was held that courts of Alabama were not required to recognize the adoption contrary to the law of Alabama. The rule of comity in such a case is not recognized in England because of what is called the Statute of Merton, which consisted of an entry on the minutes of parliament of a refusal to grant the requests of the bishops that the marriage of parents subsequent to the birth of a child should render it legitimate. We recognize the status of marriage not prohibited by our law and the status of widowhood, but in determining the dower of a widow it is governed by the law of this State because the property is located here; so we recognize the natural relation of parent and child, but the children of a British subject would inherit equally in this State and not according to the English law. We must recognize the status of John Hamilton McNamara as created by the law of California to be legitimate from his birth, and that being so, he is the sole heir of his father and entitled to the real estate in this State. This is not prohibited either by any express provision of law or by public policy. It is not contrary to public policy as manifested by statutes. Section 15 of the act concerning bastardy (Harker's Stat. p. 349,) provides that if the mother of any bastard child and the reputed father shall at any time after its birth intermarry, the child shall in all respects be deemed and held legitimate. That rule was applied, in connection with the Statute of Descent, in *Hall* v. *Gabbert,* 213 Ill. 208. The legislatures of California and of

this State, declaring public policy, have provided that a father may make his illegitimate child legitimate, and the method, whether by marrying the mother or as provided in the California statute, is of no importance. The statutes have no tendency to encourage illicit relations and have the only object of permitting a benefit or act of justice to the unfortunate. The public policy of the States is the same. Neither is the conclusion contrary to the decisions of the court as manifesting public policy. In *Butterfield* v. *Sawyer,* 187 Ill. 598, a deed conveyed a life estate to Adeline Butterfield, with remainder to her child or children that might be living at the time of her decease, and in default of a child or children to the heirs generally of Adeline Butterfield, excepting a brother of Adeline. The widow adopted a child, and it was held that the remainder to the heirs generally passed to the adopted child, though the act authorizing adoption was not in existence when the deed was made. In *Flannigan* v. *Howard,* 200 Ill. 396, the court held that a child adopted after a will was made was within the meaning of section 10 of the Statute of Descent, which provides that if a child shall be born to a testator after his will is made and there is no provision made in the will for such child and no intention to disinherit appears, the legacies and devises shall be abated to raise an amount equal to that which the child would have received had the parent died intestate. The argument that the adopted child was not the sort of child mentioned in the Statute of Descent was denied. In *Ryan* v. *Foreman, supra,* it was held that an adopted child was entitled to a continuation of a police pension after the widow's death the same as the natural child, under a law allowing a pension to a child under sixteen years of age of a deceased pensioner. These cases illustrate the attitude of the court toward adopted children and are decisive that no narrow view of the relation will be taken to defeat the law.

The decree is reversed and the cause remanded, with directions ·to enter a decree finding Mary Jeanette Mc-Namara, Margaret J. Thomas and John Hamilton McNamara each entitled to an undivided one-third of the real estate subject to the dower, and for partition and assignment of dower accordingly.

*Reversed and remanded, with directions.*

Mr. Justice Farmer, dissenting:

The crux of the question here involved is, conceding appellant's status to be that of an adopted child of John A. McNamara under the laws of California, do the rights flowing from such status there, confer on him the right to inherit real estate of his adoptive father in Illinois? The authorities unquestionably hold that if such adoption confers the same rights as adoption in Illinois would confer‧ he is entitled to inherit the real estate here.‧ Under the laws of Illinois appellant could not have been adopted by Mc-Namara. He could only adopt the child of someone else, and such adoption is required to be by a proceeding in court and a record of it preserved. Neither can an illegitimate child be legitimated in Illinois by the father acknowledging paternity without also marrying the mother. Title to land in Illinois is not to be transferred by operation of the laws of a foreign State but only in the mode prescribed by the laws of this State. (*City Ins. Co.* v. *Commercial Bank,* 68 Ill. 348.) The general rule that the status of a person as fixed by the law of the domicile will be recognized in other jurisdictions for the purpose of descent of real estate is subject to the qualification that unless the rights flowing from the status of the domicile are consistent with and not contrary to the laws and policy of this State the law of the foreign State cannot control the right to inherit land in this State. The comity between the States does not require one State to recognize the right of another State to make laws

to control the inheritance of land in another State. The law of the State in which the land is situated governs the descent, and not a decree of a court or a statute of another State. What was done in California to fix the status of appellant in that State as the adopted child of McNamara could have no such effect under our laws. The public policy of this State, as declared by our laws, does not permit the adoption of an illegitimate child by the father. Our law permits the legitimation of such a child, but that must be done by the father marrying the mother and acknowledging the child to be his. The status of appellant, therefore, was created in California by virtue of laws contrary to and inconsistent with the laws and policy of this State, and to give him the right to inherit land in Illinois, it must be held that the transmission of land by inheritance in Illinois is governed not by our law but by the law of California. This, it was held in *Keegan* v. *Geraghty*, 101 Ill. 26, will not be permitted. The proceeding in California which fixed appellant's status in that State is not recognized by the laws of this State as an adoption or legitimation, and had the same thing been done in this State that was done in California it would not have given appellant the right to inherit the land. For the courts of this State to give him that right requires holding the laws of California conferred rights on residents of that State to inherit land in Illinois which our laws deny to residents of this State. That denies the sovereignty of the several States to determine the rules of descent and heirship of property within their respective borders, and, as I understand, is contrary to the decisions on that question. In my opinion the decree of the circuit court should be affirmed.