(No. 35278.—)

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, *vs.* DONALD MERRILL CLANCY *et al.*, Appellants.——(FRANK B. CLANCY *et al.*, Appellees.)

*Opinion filed November 18, 1959—Rehearing denied Jan. 18, 1960.*

MacLeish, Spray, Price & Underwood, of Chicago, (Winfield T. Durbin, of counsel,) for appellants.

Tenney, Sherman, Bentley & Guthrie, of Chicago, (Kenneth B. Hawkins, of counsel,) for appellees.

Mr. Justice Davis delivered the opinion of the court:

This case presents a question of the construction of an *inter vivos* trust limiting gifts over to "issue" and "grand-children" of the settlor. The plaintiff, Continental Illinois National Bank and Trust Company of Chicago, as trustee, filed its complaint to construe a trust agreement entered into by Merrill C. Clancy on July 5, 1928. The sole questions raised by the pleadings are whether the defendant Donald Merrill Clancy is a legally adopted son of the settlor's son, Leslie M. Clancy, and whether he is a beneficiary under the irrevocable trust. The trial court held that neither Donald Merrill Clancy nor the issue of his body had any interest in the principal or income of the trust. Upon appeal the Appellate Court affirmed (20 Ill. App. 2d 307,) and we granted leave to appeal.

The pertinent language of the trust agreement sought to be construed is as follows:

"Third: Commencing with the date hereof, to pay the net income * * in equal shares, *per stirpes*, to the lawful issue of said party of the first part, [Merrill C. Clancy] from time to time surviving until the termination of this trust, * * *.

"Fourth: This trust shall terminate upon the death of the last survivor of Frank B. Clancy, Leslie M. Clancy, Marion C. Atherton and Laura L. Clancy, children of said party of the first part, and upon the termination of this trust, said Trustee shall pay over, * * * in equal shares, to such of the grandchildren of said party of the first part as shall then be surviving, provided,

however, that if any grandchild of said party of the first part shall have died, leaving lawful issue then surviving, said Trustee shall pay to such issue the share to which the said grandchild, their parent, would have been entitled, * * *.

"FIFTH: In the event that upon the termination of this trust, there shall be no grandchildren of said party of the first part, nor lawful issue of any deceased grandchild of said party of the first part then surviving, said Trustee shall pay over, convey and deliver all of the principal or corpus of said trust estate to said party of the first part, if he shall be living at that time, and if not, then to the heirs at law of said party of the first part, * * *."

The theory of the defendant Donald Merrill Clancy is that he is the legally adopted son of the settlor's deceased son, Leslie M. Clancy; and that in the light of surrounding circumstances he is included in the word "issue" in the third paragraph and in the word "grandchildren" in the fourth paragraph of the trust. The other defendants, appellees here, insist that the trust is unambiguous and that the defendant Donald Merrill Clancy cannot qualify as either "issue" or a "grandchild" of the settlor. They further contend that he was not a legally adopted child of Leslie M. Clancy.

The settlor, Merrill C. Clancy, was born in 1858 and achieved success as a real-estate developer and builder in Illinois. Four children were born of his first marriage: Leslie, Marion, Frank and Laura. His first wife died in 1903, and the settlor and his children moved to Spokane where they lived until his second marriage to Estelle Baxter in August, 1916. Shortly before this marriage he created a revocable *inter vivos* trust consisting of $300,000 in securities which he segregated from his other assets. The income was to go to his four children or their lawful issue *per stirpes* until 1937 when the corpus was to be distributed to his surviving children or their "lawful issue."

In July, 1928, the settlor created the irrevocable trust in question. At that time his four children were living. Marion had two children, born in 1920 and 1923; Frank had one, born in 1920; and Laura, unmarried, had none.

Neither Marion, Frank nor Laura had adopted any children. In 1923, Leslie and his then wife, residents of Nebraska, who had no children, obtained a baby boy for adoption from the Christian Home Orphanage in Council Bluffs, Iowa. A formal adoption agreement was entered into in April, 1924, but was never recorded. The boy, the defendant-appellant, was named Donald Merrill Clancy. None of the children of Merrill C. Clancy, the settlor, ever had other children either adopted or born of their body. Merrill Clancy died March 28, 1949, leaving his four children surviving him. Leslie died on June 29, 1954, and thereafter the trustee instituted this suit for construction of the trust.

The case was heard below upon voluminous depositions and stipulations of fact. We have carefully examined the entire record, and, while there are conflicts in the testimony, many of the surrounding circumstances are undisputed. The settlor knew Donald well for about a year and a half prior to the execution of the 1928 trust. He apparently liked the boy and did not distinguish him or treat him in a manner different from the grandchildren of his blood. He knew Donald was not born of the blood of Leslie, but apparently did not question the legal sufficiency of the adoption proceedings. There is some testimony that occasionally when speaking to strangers, the settlor would introduce Donald as his grandson.

In construing this trust instrument, we must seek the intention of the settlor, insofar as it is ascertainable. In this effort we look first within the four corners of the instrument, (*Storkan* v. *Ziska,* 406 Ill. 259; *Mitchell* v. *Snyder,* 402 Ill. 279; *Richardson* v. *Roney,* 382 Ill. 528,) but we may also consider the surrounding circumstances at the time the instrument was executed to the extent that they may aid in determining the settlor's intention in using certain language. *Munie* v. *Gruenewald,* 289 Ill. 468; *Coon* v. *McNelly,* 254 Ill. 39.

Under the language of the trust instrument, the first gift of income was to the settlor's lawful issue *per stirpes.* Upon termination, the trust was to be distributed to the settlor's grandchildren or their lawful issue. In default of grandchildren or their lawful issue, the *corpus* was to go to the settlor's heirs-at-law. Even if we assume that Donald Merrill Clancy was legally adopted by the settlor's son prior to 1928, he would not ordinarily be included under the terms "lawful issue" or "grandchildren" under the law and statutes in force in 1928.

The term "issue" was then synonymous with "descendants" and meant those descending or issuing out of the stock or blood. It did not include strangers to the blood. (*Stewart* v. *Lafferty,* 12 Ill.2d 224; *In re Estate of Tilliski,* 390 Ill. 273; *Miller* v. *Wick,* 311 Ill. 269; *Marsh* v. *Field,* 297 Ill. 251; *In re Howlett's Estate,* 366 Pa. 293, 77 A.2d 390.) Nor was an adopted child an heir or grandchild of the parent of the adoptive father. (Smith-Hurd Stat. 1927, chap. 4, par. 5.) It is clear that the legal meaning of the language of the 1928 trust instrument would exclude Donald regardless of the legality of his adoption. Such conclusion is apparently not disputed, but counsel for Donald strongly urge that the surrounding circumstances give evidence of a contrary intention.

While we are reluctant to construe the legal meaning of a written instrument by resort to surrounding circumstances, (*Mitchell* v. *Snyder,* 402 Ill. 279; *Cahill* v. *Michael,* 381 Ill. 395,) courts have, in order to give expression to a clear intention of a settlor or testator, considered extrinsic evidence to show that an existing person was meant to be included by the language used. We so construed the will in *Munie* v. *Gruenewald,* 289 Ill. 468, which appellant claims is controlling here. In that case, Joseph Munie, by will, left his estate to his wife for life, with the remainder to be divided among his children. He further provided that the remainder share of his deceased son Edward should go

to his children, and should any of his other children predecease him or his wife, in that event the share of such deceased child should go to his or her respective children. At the death of the life tenant, there were surviving children and grandchildren of the testator and one legally adopted daughter of a deceased child of the testator. We held that the adopted child was included within the meaning as a child of a deceased child.

We do not consider that case controlling here. We there pointed out that a failure to so construe the will would result in a partial intestacy, and the courts should adopt any reasonable construction of a will, consistent with its terms, to avoid that result. (289 Ill. at 471.) We also relied on the fact that at the time of the execution of the will, an adopted child inherited from the parents by adoption, the same as a natural child. The testator was there presumed to have known the law in relation to adoption and to have relied on the adoption statute as interpreted by this court. (289 Ill. at 471-472.) Indeed, in *Munie,* we merely construed the will in accordance with the normal legal meaning of the words used. However, the use of the terms "lawful issue" and "grandchildren" in the case at bar are not the equivalent of "child of my child," as used in *Munie.*

Nor do we have a situation, like that in *Coon* v. *McNelly,* 254 Ill. 39, where we construed "grandchildren" to include step-grandchildren because there were no others to whom the term could possibly apply. There the testator bequeathed the residue of his estate to "grandchildren," however, he left neither widow, parents, children, sister or descendants surviving, but, only a half brother and 12 grandchildren of his deceased wife. It was plain beyond peradventure that the grandchildren of his wife were amply described in the will.

In the case at bar, the settlor clearly excluded his wife and step-children and step-grandchildren from the benefits

of the trust. He named a specific class of takers—his lawful issue. His intention, as expressed by the language of the trust, is not irrational and absurd, but consonant with long standing instincts and traditions. (*Keegan* v. *Geraghty*, 101 Ill. 26, 35; *In re Howlett's Estate*, 366 Pa. 293, 77 A.2d 390, 392.) We do not believe that evidence that the settlor was fond of Donald, treated him without discrimination, and, on occasion, introduced him as a grandson, is sufficient to alter the clear expression of intention to leave the principal and income of the trust to his blood line.

Counsel, however, contend that the decision of the California court in *In re Clancy's Estate*, 159 Cal. App. 2d 216, 323 P.2d 763, should influence us to a contrary conclusion. That case involves the construction of a holographic will executed by Merrill C. Clancy, in 1947, in which he refers to Donald as a grandchild and also bequeaths certain property to the testator's children, or their lawful issue. The California Appellate Court held that Donald was entitled to take as "lawful issue" of his deceased father, Leslie Clancy. We do not regard either the findings of fact or the reasoning involved in that case as compelling here. The intention of Merrill Clancy in 1947, when he executed his will, offers no enlightment concerning his intent in 1928 when the trust was created. In addition, the will also included many objects of his bounty omitted from the trust, such as his widow and stepchildren. An intention in 1947 to include Donald is fully consistent with an intention in 1928 to limit a specific fund to the issue of the settlor's body.

The California court, in construing the language of the will, was also faced with far different provisions. In the will itself, Donald was referred to as a grandchild of the testator; and he took under the will not as issue of the testator, but as issue of Leslie. The adoption statutes in effect in 1957 were much more liberal than those of 1928, and California courts were then stressing that it was public

policy to treat adopted children the same as blood children in the absence of a contrary expression by the testator. (323 P.2d at 767.) That court noted that the will in question was prepared by an untutored layman and held that such fact minimized the significance to be given to the legal meaning of the words, "lawful issue." In the case at bar, the 1928 trust was prepared by counsel with extensive experience in the area of wills and trusts and this fact militates against varying the clearly expressed intention of the settlor.

We have also examined other foreign cases cited by counsel in which "issue" or "children" have been construed to include adopted children. Most of these are collected in 70 A.L.R. 621, and we find that they are either based on adoption statutes far different from that of Illinois in 1928, or that they are founded on dissimilar facts and language. Such cases, even if from this jurisdiction, would have but little force as precedents in construing this trust due to variances in the language used and the circumstances involved. *Cahill* v. *Michael,* 381 Ill. 395.

This court is without omniscience to know what was in Merrill Clancy's mind in 1928 when he executed this trust. We do know, however, that with the aid of able counsel, he used well understood terms to limit the trust to his issue—the descendants of his blood *per stirpes.* The mere fact that the settlor was very fond of the child Donald, not of his blood, assumed to have been adopted by the settlor's son, does not make this disposition unnatural or illogical.

From all the evidence in the record most favorable to Donald, we cannot find a clear intent to include him in the blood group for whom this trust, by its terms, was established. It is suggested that the intent to exclude Donald could have been more explicit. However, an intention to include him could readily have been expressed and would seem to appear as essential to one trained in drafting such instrument. We therefore conclude that the surrounding circumstances do not indicate an intention of the settlor

contrary to the settled meaning of the language used. It follows that the trial court and Appellate Court were correct in holding that Donald Merrill Clancy and his issue have no interest in the 1928 trust.

In reaching the foregoing conclusion we have assumed that Donald was the legally adopted son of Leslie Clancy. Consequently, it is unnecessary to determine the legality of the adoption proceedings. The decision of the Appellate Court in affirming the trial court is accordingly affirmed.

*Judgment affirmed.*