ROBERT FREEMAN FORD *et al.*, Plaintiffs-Appellees, *v.* JUDITH FORD NEWMAN *et al.*, Defendants.—(JOHN ROBERT FORD *et al.*, Defendants-Appellants.)

Fourth District    No. 14790

Opinion filed September 29, 1978.—Rehearing denied October 31, 1978.

CRAVEN, J., dissenting.

Edward J. Kionka, of Columbia, and W. M. Pinney, Jr., of Husted, Pinney, Ogg & Caccia, of San Francisco, California, for appellants.

Thompson & Strong, of Pontiac (Kenneth L. Strong, of counsel), for appellees.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
This appeal concerns the question of whether the adopted children of Tod Ford III were included in the reference to his "issue" and "lawful issue" made by his mother Lillian S. Timken in a trust indenture executed by her on December 31, 1941.

On July 16, 1969, plaintiff Robert Freeman Ford and Bank of Pontiac, trustees under the indenture, filed a complaint in the circuit court of Livingston County seeking various types of relief. The complaint alleged in part that John Robert Ford and Becky Lou Ford White, the adopted children of Tod Ford III, then deceased, were not his "lawful issue" within the trust instrument and that neither they nor their descendants had any interest therein. Those adopted children were made parties-

defendant and because they are the only appellants, they will hereafter be called defendants. They answered, denied those allegations and requested a declaration that they were the "only lawful issue of Tod Ford III" and sought an accounting. The decree of the trial court denied the claims and requests of the defendants.

The decree stated that the trial court had found the settlor's actual intent to include only blood descendants of her sons as their "issue" or "lawful issue." Defendants concede that the actual intent of the settlor should control if it can be determined but argue that no such determination can be made here. They contend that under those circumstances, the court must resort to rules of construction which are aimed not at determining intent but rather at determining proper public policy as to the distribution of the property between those who might have an interest in it. They conclude that because all of those having a possible claim to the property were domiciled in California and the question to be decided concerned the status of defendants as "issue," the court should follow the law of California in making that determination.

The trust instrument in question was executed in the state of New York where the settlor was domiciled. The corpus thereof presently consists principally of real property located in various Illinois counties. The instrument provides that one-half of the income from the trust is to be paid to each of the settlor's two sons and that, upon the death of either, his share shall be paid "to his lawful issue him surviving, during their respective lives, in equal shares per stirpes and not per capita." Should either son die without "lawful issue him surviving," the instrument directs that his share be paid to the other son, or to "his lawful issue him surviving." The instrument further grants an interest in the trust to "any issue of either of said beneficiaries not now in being."

Defendants, as well as plaintiff Robert Freeman Ford, surviving son of the settlor, and his three natural-born children, are California domiciliaries. Defendants were adopted by the settlor's son, Tod Ford III, in the early 1940's. Tod Ford III died in 1951; the settlor died in 1959.

*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 163 N.E.2d 523, involved the construction of a trust agreement executed in 1928 which limited gifts over to "issue" and "grandchildren" of the settlor. There an adopted son of the settlor's son sought a construction of the instrument so as to be included as a beneficiary thereunder. The trial court refused the request. The supreme court affirmed stating:

> "In construing this instrument, we must seek the intention of the settlor, insofar as it is ascertainable. In this effort we look first within the four corners of the instrument, [citations] but we may also consider the surrounding circumstances at the time the

instrument was executed to the extent that they may aid in determining the settlor's intention in using certain language [citations]." (18 Ill. 2d 124, 127, 163 N.E.2d 523, 526.)

The court recognized that under the law and statutes in force in 1928, the term "issue" meant blood descendants. The court noted that application of this meaning to the terms as used in the trust did not result in an irrational or absurd interpretation, and ruled such to be the clear intention of the settlor.

At the time of the instant trust's execution, section 14 of the Probate Act provided:

"A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent." (Ill. Rev. Stat. 1939, ch. 3, par. 165.)

This language is substantially the same as that in existence at the time the *Clancy* trust was created. Subsequently that section was amended by the enactment of the following:

"For the purpose of determining the property rights of any person under any written instrument executed on or after September 1, 1955, an adopted child is deemed a natural child unless the contrary intent plainly appears by the terms thereof. This Amendatory Act of 1955 shall not be used in determining the taker of property under any instrument executed prior to September 1, 1955." (Ill. Rev. Stat. 1955, ch. 3, par. 165.)

This statutory language now appears at section 2—4e of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 2—4(e)). Similar provisions appear at "An Act relating to the construction of written instruments with regard to adopted children * * *" (Ill. Rev. Stat. 1977, ch. 40, par. 1652).

■■ *Clancy* is the most recent supreme court case in point. It partly relies, by analogy, upon the statutory provisions for descent in effect at the time of the execution of that trust. Those same provisions were in effect when this trust was executed. They provide for inheritance by adopted children of a descendant but not by adopted grandchildren. The combined effect of *Clancy* and the cited statutes is that unless a contrary intention clearly appears, the terms "issue" or "lawful issue," of a child of a settlor, do not include adopted grandchildren of that settlor when used in trusts drafted before September 1, 1955. The evidence here that the settlor knew that Tod's wife could not conceive and that the parties were contemplating adopting a child would not indicate a clear intent to include an adopted child as "issue" of Tod.

Neither *Clancy* nor any other Illinois case called to our attention

supports defendants' theory that there is a dichotomy between determining the settlor's intent and the rules of construction applicable where such intent is unclear. *Clancy* clearly indicates that the purpose of construction is to determine the settlor's intent. The argument is made that *Clancy* is of no help in determining the instant settlor's intent because that case had not been decided at the time of the execution of this trust. However, that decision did not purport to overrule prior cases but rather set forth what the law had previously been at times including that in which this trust was initiated. If Illinois law is applicable to the construction of this trust, the decree of the trial court was correct.

Section 277 of the Restatement (Second) of Conflicts of Laws (1971) states:

> "(1) A will or other instrument creating a trust of an interest in land is construed in accordance with the rules of construction of the state designated for this purpose in the instrument.
> (2) In the absence of such a designation, the instrument is construed in accordance with the rules of construction that would be applied by the courts of the situs." (Restatement (Second) of Conflicts of Laws §277 (1971).)

As no State is designated in the trust here for purposes of determining the applicable rules of construction, the conflict of laws rules of Illinois, as the situs, would control.

We are aware that Illinois has applied the rule that in conflict of laws situations, the law of the State with the most significant contacts should apply. In *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593, where the parties to a fatal collision occurring on the Iowa portion of a Mississippi River bridge were all from Illinois, the law of this State rather than that of Iowa was applied to determine if liability could attach to a party who was free of fault, merely by his being an owner of one of the vehicles. In *Wartell v. Formusa* (1966), 34 Ill. 2d 57, 213 N.E.2d 544, and *Aurora National Bank v. Anderson* (1971), 132 Ill. App. 2d 217, 268 N.E.2d 552, the courts looked to the law of the domicile of the parties to determine if one family member had capacity to sue another family member in tort. In *Johnson v. LaGrange State Bank* (1977), 50 Ill. App. 3d 830, 365 N.E.2d 1056, the issue was whether a deceased wife had violated the marital rights of her husband in setting up an inter vivos trust. Although the wife was domiciled in Florida at the time of her death and the assets of the trust were largely intangible personal property, because the corpus of the trust was located here and the husband domiciled here, Illinois law was ruled to control the husband's right to renounce the will and set aside the trust. No conflict of laws decision has been called to our attention concerning the choice of law rules in construing the terms of a trust.

Defendants rely on *McNamara v. McNamara* (1922), 303 Ill. 191, 135

N.E. 410. There a son fathered out of wedlock by a California domiciliary had been adopted by the father under California law by means of the father's acknowledgment and thus legitimatized under the law of California. The son remained a California domiciliary. Upon the father's intestate death, the son asserted an interest in Illinois property in which his father had an interest at the time of his death. A California decree had ruled that because the father and mother had lived together and recognized the son born out of wedlock, he was legitimatized, had the status of an adopted child and was entitled to inherit from his father. At that time, Illinois law permitted an adopted child to inherit but did not provide for adoption in the manner in which the son had been legitimatized by California law. The supreme court concluded that since adopted children could inherit in Illinois, the dispute was whether the son was adopted. Because the question was one of status, the court ruled that the law of the domicile of the father and son should determine whether the son was adopted. Because the son was recognized in California as being adopted, he was permitted to inherit under Illinois law.

Defendants contend that the question here is whether they have the status of "issue" or "lawful issue" and that this question involves predominantly their interest and that of the other trust beneficiaries, all of whom are California domiciliaries. They maintain that because the instrument must be construed, the construction should be made upon the basis of the public policy of California rather than the presumed intent determined according to Illinois law.

However, no question of the construction of a document or the intent of a settlor was involved in *McNamara* nor is the validity of an out-of-State adoption involved here.

The trust instrument in question in this case had many significant contacts with this State. Not only was Illinois the situs of the predominate assets of the trust both at its inception and at time of hearing, but the State was selected by the settlor to play a crucial role in the administration of the trust. The instrument named the settlor and her two sons as trustees and provided that the remaining trustees select a successor trustee in the event that the trusteeship of any of them terminated. It further stated that upon the failure of the remaining trustees to appoint a successor and upon the request of any remaining trustee or beneficiary, the president of the Chamber of Commerce of the State of Illinois could appoint a successor trustee. The trust document also required that any successor trustee be an Illinois bank or trust company having a certain minimum capitalization except that "with respect only to the parcel of land in the State of Iowa" described in the schedule to the trust instrument, an Iowa bank or trust company might be appointed. Thus, even if the Iowa bank were appointed, the Illinois trustee would have the major responsibility in the

trust administration and this would be so even if all the Illinois real estate were sold. The responsibility of the contemplated Iowa trustee was therefore limited solely to a particular tract of Iowa land.

We conclude that the recent Illinois policy of applying, in conflict of laws situations, the law of the State having the most significant contacts is appropriate for this case and find Illinois to be that State. The domicile of the beneficiaries and cotrustee happens to be California but their domiciles are not mentioned in the trust and can easily change from time to time. Although New York was the place of execution of the trust instrument and the domicile of the settlor, the format for the administration of the trust as set forth in the instrument indicate that New York was not intended to have as significant contacts with the trust after its execution as was Illinois. The focus of the trust instrument is upon this State.

Our choice of Illinois law brings about a result likely to correspond to the desires of the settlor and one that is internally consistent. Although the settlor and the scrivener who drafted the instrument would be assumed to be most familiar with New York law, their knowledge that Illinois was the situs of most of the assets and their reliance upon Illinois institutions to participate in the selection of a successor trustee and the administration of the trust indicate an expectation that Illinois law was to govern the determination as to who would be beneficiaries. Because Illinois law is selected not merely because it was the situs but because of other contacts as well, Illinois law would logically determine the beneficiaries of even those portions of the trust property having a situs in Iowa.

We determine that (1) the trust instrument should be construed according to Illinois law, (2) under that law, the terms "issue" and "lawful issue" in trust instruments drafted in 1941, when referring to "issue" or "lawful issue" of one other than the settlor mean blood descendants unless a contrary intent is clearly shown, and (3) no such contrary intent was shown here.

Accordingly, we affirm.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The majority opinion makes two substantial errors, either of which requires a result different from that reached. First, the majority has incorrectly selected the law of Illinois to govern this case. Second, even if the law of Illinois is to be applied, the majority has done so incorrectly.

In determining the choice of law, I agree with the majority that section

277 of the Restatement (Second) of Conflicts of Laws (1971) should be applied. My disagreement lies in the application. The comments to section 277(2) of the Restatement provide:

"When the settlor or testator has not designated a state whose rules are to govern the construction of the trust instrument or will, it is construed in accordance with the rules of construction that would be applied by the courts of the situs. The question then is whether the courts of the situs would apply the rules of construction prevailing in the state of the situs or would apply the rules of another state, such as the state of domicil of the settlor or testator. This may depend upon whether the question of construction relates to matters pertaining to the administration of the trust or to other matters, *such as who are beneficiaries and the extent of their interests.*" (Emphasis added.)

If the question presented to this court were one of title or boundary dispute, I would not quarrel with the analysis that the situs of the realty provides *the* most significant contact. However, the question here is in the absence of the settlor's intent, which State has the most significant contacts, and how that State would construe the settlor's intent. The *only* contact Illinois has is that the realty is located here, and that an Illinois bank was *later* named as a successor trustee. I find the use of the situs in Illinois as a contact unacceptable to determine the settlor's intent because the corpus has included personalty and realty located *both* in Illinois and Iowa. As to the selection of an Illinois bank as trustee, the settlor also provided for the selection of an *Iowa bank* as successor trustee in the event the trust still held Iowa realty when the need for a successor trustee arose. An absurd result could obtain with application of the law of the situs if Iowa law with respect to adopted children were different than Illinois law and even more absurd if the conflicts rule relating to personalty pointed to a third jurisdiction.

Choice of law rules are implemented for two basic purposes: (1) To provide uniformity of results, and (2) to give effect to the justifiable expectations of the parties. The majority opinion does neither. As noted above, applying the law of the situs could provide the absurdity of construing the settlor's intent in the document differently in each situs. Additionally, the only contact the settlor had with Illinois was that a portion of the trust *res* was located here. Absent an express choice of law provision in the trust, one would have to grasp blindly to say the settlor's justified expectations were to apply Illinois law to determine her absent intent.

The law that should be applied is the law of the State predominately concerned with the matters with which the issue of construction deals. To provide uniformity of results and to give effect to the justifiable

expectations of the settlor, this court should look to the law of New York to determine the settlor's intent. At the time the trust was executed, the settlor was a domiciliary of New York and the trust was executed in New York.

> "The reasons advanced for the rule pointing to the domicile of the testator on questions of construction of the will [or trust] are that the domicile's rule will be most likely to coincide with the actual intention of the testator and that, in a case in which the testator has made the same cryptic provision concerning land situated in several states, with differing domestic rules of construction, applying the law of the testator's domicile will avoid the absurdity of construing his will differently at each situs." (Weintraub, Commentary on the Conflict of Laws, 328 (1971).)

Weintraub goes on to say that these reasons are not a convincing argument for looking to the law of the testator's domicile, but rather an argument against applying the law of the situs without further contacts. The law presumes the settlor to have known the law in effect at the time the trust was executed. It appears obvious that the law of the settlor's domicile is likely to be the most helpful since it is the law with which she (and her scrivener) was the best acquainted.

The status of adopted children in relation to a testamentary gift over "to issue" in New York would appear to be the same as natural children of the same class. (See *In re Will of Lawrence* (1974), 86 Misc. 2d 579, 381 N.Y.S. 2d 713; *In re Will of Upjohn* (1952), 304 N.Y. 366, 107 N.E.2d 492.) However, in situations where the law of a sister State is to be applied to construe an instrument in Illinois, the determination of the law of the sister State comprises a question of fact for determination initially by the trial court. Ill. Rev. Stat. 1977, ch. 51, par. 48g.

I would therefore remand this case to the circuit court for a determination of the law of New York, as a question of fact, for the application of those principles to the facts of this case.

Further, if Illinois law is to be applied, the majority opinion has failed to make a proper application of the law. The opinion is bottomed on the unsupported assumption that the settlor manifested an intent to restrict the distribution of the corpus of the trust to heirs of the body. The majority supports this assertion by reference to *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 163 N.E.2d 523. There, the court relied upon the statute in effect at the time this trust was executed (Ill. Rev. Stat. 1939, ch. 3, par. 165) to hold that the term "issue" meant only heirs of the blood.

That statute concerned only the distribution of intestate property. It did not by its terms control the distribution of testate or trust property

generally. From this statute, however, the court in *Clancy* determined a settlor's intent. As Justice Stone pointed out in his dissent in *Belfield v. Findlay* (1945), 389 Ill. 526, 536-37, 60 N.E.2d 403, 410, adopted children are generally given the same rights as natural children. The forerunner of the section which came to be paragraph 165 here (section 5 of the Adoption Act (Ill. Rev. Stat. 1874, ch. 4, par. 5)) was taken directly from an identical Massachusetts statute. The Massachusetts Supreme Court in *Sewall v. Roberts* (1874), 115 Mass. 262, interpreted that provision to allow an adopted child the same rights as the natural child of the parent-settlor. While *Sewall* is not relevant to the interpretation of the trust here because of the degree of kinship involved, a Connecticut case based on a similar statute has construed the identical fact pattern that is presented to this court. In *Mooney v. Tolles* (1930), 111 Conn. 1, 149 A. 515, the court allowed an adopted grandchild to take a share of the corpus of a trust that was to be distributed to a son's "lawful child or children."

It is true that in construing wills and trusts it is the policy of the law to first look to the four corners of the instrument to determine the intent of the settlor and then to look to extrinsic indications of the settlor's intent. (*Clancy.*) In determining the intent of the settlor, it is also true courts will presume the settlor to have known the law in effect at the time the trust was executed and to have acted in conformity therewith. (*Belfield.*) The majority uses this maxim to relate the decision in *Clancy* back to 1941 when the trust was executed. To engage in the fiction that in 1941 the settlor knew the terms used here to identify the beneficiaries of the trust expressly excluded children not yet adopted, when the supreme court did not so decide until 1959, is something I will not do.

On the contrary, if the settlor is to be presumed to have known the law in effect at the time this trust was executed, it is just as reasonable to conclude that the term "issue" included adopted children under case law then in effect. (See *Munie v. Gruenewald* (1919), 289 Ill. 468, 124 N.E. 605 (adopted daughter allowed to take a per stirpital share of her mother's remainder interest); *Coon v. McNelly* (1912), 254 Ill. 39, 98 N.E. 218 (the term "grandchildren" was held to include step-grandchildren).) We must also presume the settlor to have been familiar with the Adoption Act under which adopted children are now treated and were then treated under the law as the legal children of their adoptive parents, and to expect any adopted grandchildren to be treated accordingly.

Under the existence of these conflicting interpretations of what the law was in 1941 with regard to the rights of defendants under this trust, it can be more likely assumed that the settlor had no intent whatsoever regarding subsequently adopted children. Even after both parties have had a full opportunity to prove the settlor's intent by extrinsic evidence,

no conclusive proof has been adduced on that question. The subsequent adoption of the defendants by Tod Ford III was clearly a contingency for which the settlor did not plan. Therefore, no intent is shown.

While the majority has assumed the settlor's intent, I believe it to be the better course that when an assumption must be made, the assumption should be in accord with public policy now existing. In 1955, the legislature determined it to be the public policy of this State that adopted children enjoy all the rights of natural children without limitation. (Ill. Rev. Stat. 1977, ch. 110½, par. 2—4(e).) While the operative terms of that Act limit it to instruments executed after its effective date, that limitation in my mind does not abrogate it as a statement of present public policy. That policy should control here.