Louise W. Rose, Individually, and as Co-Executor of the Estate of Clarence S. Rose, Deceased, Plaintiff-Appellee, v. St. Louis Union Trust Company, Individually, as Co-Executor of the Estate of Clarence S. Rose, Deceased, and as Trustee of an Inter Vivos Trust Created by Clarence S. Rose, C. Stephen Rose, Jr., Henrietta Rose Passega, and Unknown Owners, Defendants, St. Louis Union Trust Company, etc., Defendant-Appellant.

Gen. No. 67–99.

Fifth District.

August 14, 1968.

Rehearing denied and opinion modified October 23, 1968.

81

C. E. Heiligenstein and W. E. Ackermann, of Belleville, for appellant.

Hoagland, Maucker, Bernard & Almeter, of Alton (James K. Almeter, of counsel), for appellee.

MORAN, J.

Plaintiff brought this case individually and as coexecutor of the estate of Clarence Rose, her husband, against St. Louis Union Trust Company in its individual capacity as coexecutor of her husband's estate and as trustee, to set aside an inter vivos trust created by decedent. The case was tried without a jury before the Twentieth Judicial Circuit of St. Clair County, Illinois. Defendant appeals from a decree in plaintiff's favor.

Plaintiff and Clarence Rose were married in 1927 and Clarence died testate, a resident of the State of Illinois,

on February 24, 1963, at the age of 81, leaving plaintiff and two children by a prior marriage. In 1955 Mr. Rose, while a resident of Missouri, executed a will that provided his two children were to share, equally, 60% of his estate and that plaintiff was to receive the income from the remaining 40% of the estate for life, with a noncumulative right to $2,000 principal annually. Upon Mrs. Rose's death this 40% or its residue was to be divided equally between his children.

In July 1958, Mr. Rose executed an irrevocable, inter vivos trust with defendant as trustee and transferred substantial assets into the trust. Defendant-trustee was to pay Mr. Rose the income thereon for life and upon his death divide 60% of the assets equally between his children and hold the remaining 40% in trust for his wife on much the same terms as the prior testamentary trust. In September, 1958, Clarence Rose executed a codicil to his will which excised the earlier testamentary trust for his wife and substituted a pour-over of this 40% of his estate into the living trust. The assets transferred constituted the bulk of decedent's estate, although it is not clear from the record what property, if any, passed to his wife by joint tenancy. Defendant-trustee has made payments totaling 60% of the trust estate to decedent's children according to the terms of the trust agreement, and has paid state and inheritance taxes computed on the basis of validity of the trust and unrenounced will and codicil, thus depriving the estate of any marital deductions.

Harry R. Ball, who had officed with decedent and had purchased decedent's business from him, testified Mr. Rose came into their offices in the summer of 1958 and said, "I just fixed it so Lola (his wife) won't get anything." He went on to testify that decedent said he had checked with an attorney to see if the arrangement with St. Louis Union Trust would stand up.

Mr. William Stolle, plaintiff's brother who lived next door to the Roses, testified he heard Mr. Rose say on several occasions to Mrs. Rose, "I am going to change my will and see that you don't get any money. No more than just enough to get by on." Mr. Stolle also recounted several occasions on which Mr. Rose passed out and one such occasion in 1957 on which Mr. Rose remarked, "One of these days I will pass out and that will be the end of it."

Blanche Stolle (Mrs. William Stolle) testified much as her husband had, adding that she had heard decedent refuse to buy a new car because he did not want to leave his wife a good car. Mrs. Stolle was not present when decedent allegedly remarked about his fainting spells.

Mrs. Louise Rose testified at some length, over defendant's objection that she was incompetent under the Illinois Dead Man Statute (Ill Rev Stats, c 51–2). She testified that she and her husband argued frequently, that he said he was going to change his will so that there would be less and less for her, and that he had fainting spells, although he was otherwise very active. Mrs. Rose generally confirmed defendant's evidence that Mr. Rose remained active in business until very late in his life and took several long trips during his later years, traveling twice to Europe and once to Florida.

Plaintiff introduced a series of correspondence between decedent and defendant and defendant's intraoffice memos indicating Mr. Rose retained some control of the trust corpus contrary to the terms of the trust, and plaintiff argued that decedent used defendant as an agent and did not relinquish control. A vice-president of St. Louis Union Trust Company, Mr. Leroy Ozment, testified the transactions were instances of courtesy consultation which was a custom of the trust business and a necessary incident thereof if good customer relations are to be maintained.

The trust was negotiated and executed in St. Louis, Missouri, and was administered in Missouri by defendant, a Missouri corporation with its principal place of business in Missouri. The trust corpus was kept in Missouri and the trust agreement used Missouri law to determine rights to the corpus should the grantor die without his wife or children surviving him. Plaintiff alleged that Missouri law governed the trust's validity and the case was tried and determined on this basis.

The trial court has made 45 findings of law and fact upon which it rendered its decree finding the trust was voidable as a testamentary disposition effected without the formalities of a will and as a fraud on the marital rights of Mrs. Rose. As a result, the decree ordered the defendant, St. Louis Union Trust Company, to pay over to the coexecutors all of the entrusted property, or its equivalent in values as of the date of the death of Clarence S. Rose, plus interest at 5% per annum from that date. The court also ordered that since plaintiff's attorneys had recovered assets for the estate, and the testamentary scheme of decedent was ambiguous and required judicial construction, that the probate division should allow reasonable attorney fees out of the total sum recovered for the estate. We decline to pass upon the propriety of each of the specific findings since many of them become immaterial and premature in the light of this opinion, and will be obviated by compliance by the lower courts with the holdings and directions herein contained. We therefore affirm only those findings that are consistent with this opinion and disapprove the remainder.

Appellant contends the trust was not voidable for either reason under the law of Missouri. The basis of voidability is, of course, important for if the trust is voidable because it is subject to and fails to comply with the Statute of Wills, the entire trust is voidable; while

if voidable only because it is in fraud of a surviving spouse's rights, the trust can only be voided to the extent necessary to protect those rights. Edgar v. Fitzpatrick (Mo App), 369 SW2d 592 (1963) modified on appeal, 377 SW2d 314 (1964). Wanstrath v. Kappel, 356 Mo 210, 201 SW2d 327 (1947).

Mr. Rose irrevocably transferred title and possession of trust assets to the trustee, retaining only a life interest in the trust's income. The trust was completely executed and irrevocable even though Mr. Rose exercised some control in managing trust investments. It is clear, therefore, that this trust was not testamentary in the sense that it was an illusory transfer to take actual effect only at death. As such, the trust is not wholly voidable for failure to comply with the statute prescribing certain formalities for wills. Restatement of the Law of Trusts, Second, § 57 (1959). To conclude the trust was not testamentary, however, does not fully answer the question for a trust may be valid for one purpose and voidable for others. Wanstrath v. Kappel, supra.

> "It appears to be the rule in Missouri that a conveyance or transfer of property by a husband without consideration and with the intent and purpose to defeat his widow's marital rights in his property, is a fraud upon such widow and she may sue in her own right and set aside such fraudulent conveyance and recover the property so fraudulently transferred to the extent of her interest therein." 49 ALR2d 546.

Section 474.150(1) of the 1959 Missouri Revised Statutes provides:

> "Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in the estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered

86

from the donee and persons taking from him without adequate consideration and applied to the spouse's share, as in the case of his election to take against the will."

In Merz v. Tower Grove Bank & Trust Co., 344 Mo 1150, 130 SW2d 611 (1939) and in Wanstrath v. Kappel, supra, the Supreme Court of Missouri held a widow may avoid voluntary transfers of property made by her husband in immediate contemplation of death with the intent and purpose to defeat and defraud the widow of her statutory marital rights. Missouri Law, then, is concerned with two aspects of the transfer: Its timing and the intent. The Merz case also provides a listing of relevant evidence and circumstances:

". . . In determining the intent and purpose of deceased in executing the trust we may weigh and consider all facts and circumstances in evidence. The condition of deceased's health, his knowledge of his condition and his realization of the near approach of death, his expressions of his desire, intent and purpose, the detailed terms and provisions of the trust agreement, the percentage of his property conveyed in trust, the limitations in the trust agreement as against his wife, the form and content of his previous will, the execution of a new will contemporaneously with the execution of the trust conveyance, . . . his expressions of satisfaction with his efforts in the disposition of his property, his expectation of death, and his readiness for it; these and all other facts and circumstances in evidence were for the consideration of the Court. In determining whether or not the deceased intended to defeat and defraud respondent of her marital rights, we cannot presume a fraudulent intent, but it may be inferred when it is a legitimate deduction from all the facts and circumstances in evidence in a given case."

87

An important factor in these cases is whether the surviving spouses knew the terms of the transactions. "The lack of courage to submit a matter involving mutual interest to mutual consideration is an index to the state of mind of the grantor to which the maxim that secrecy is a badge of fraud has peculiar application." Hastings v. Hudson, 359 Mo 912, 224 SW2d 945 (1949).

Merz and Wanstrath, supra, concern unrevoked revocable trusts, not irrevocable trusts, but Missouri courts have applied the same principles to completed irrevocable transfers. Hastings v. Hudson, supra; Breashears v. Breashears, 360 Mo 1057, 232 SW2d 460. Presumably, the grantor who, in immediate contemplation of death, has set about the final disposition of his earthly goods with the intent to defraud his surviving spouse would not care if the trust were revocable or not. The right to revoke a scheme would not have much value to one in immediate contemplation of death and terming the trust irrevocable should not guarantee the scheme's success.

With the requirements determined, the question becomes whether or not the evidence was sufficient to support the findings, and it is apparently the force of appellant's argument that it was not. Admittedly, identical cases may not be available and contrary results may have issued from similar situations, but each case turns on its own facts and the task of this court is to determine if the particular decision is reasonable in terms of the whole evidence.

In Hastings v. Hudson, supra, suit was instituted to set aside completed transfers of both real and personal property. The trial court denied plaintiff any relief and plaintiff appealed to the Supreme Court of Missouri. The transfers were made by the wife beginning in November, 1945, and continued through 1946 and 1947. The wife died in January 1948 at the age of 81. The property transferred included that which the wife owned at the

time of her marriage and that which came to her by inheritance from her family after her marriage.

The wife was being treated for a heart ailment by a doctor who cautioned her about the condition which led to her death ten years later. The doctor testified that she was much concerned about the condition of her heart. In reversing the judgment of the trial court, the Supreme Court of Missouri used language which we believe pertinent to the present case:

> "Viewing the case in the light of the evidence and of the actions of the parties subsequent to the transfers leads us to the conclusion that the sole purpose, as well as the idea which caused the transfers to be made, was to prevent any of the property of Mrs. Keyes from going to her husband or to the Keyes family.

> ". . . We hold that the transfers made by Mrs. Keyes were made for the purpose of keeping her property in the Hudson family and thereby preventing Keyes from getting any part of it. . . . Both defendants admitted the transfers were made without the knowledge of Keyes. We are also convinced that the transfers were made in anticipation of death, as defendant's witness Dillon testified Mrs. Keyes told the witness her health was not as good as it 'had been and for that reason she thought best to prepare for the things that might come . . . .' Mrs. Keyes was then seventy-nine years of age. . . .

> "The marital relation involves the most unlimited trust and confidence. The conduct of each spouse enters into the life of the other with its gifts of comfort or burdens of misery. Others may deal at arm's length, but they deal upon the standpoint of unity. The law imposes upon them no duty of suspicion or distrust but they may hang their faith

upon the mutual honesty which the nature of the relation necessarily implies. To safeguard their unity of interest is the object of the laws we are now considering. It was to destroy this unity that the conveyances in issue were made. The lack of courage to submit a matter involving mutual interest to mutual consideration is an index to the state of mind of the grantor to which the maxim that secrecy is a badge of fraud has peculiar application. That the transaction calls upon equity for correction has been firmly established by the decisions of this court from which we have already quoted." Id. at 949–950.

The evidence in the present case established the decedent was of advanced age when he executed the trust, was subject to fainting spells and had once said he eventually expected one of the fainting spells to be terminal. A very substantial part of Mr. Rose's personal assets were transferred to the trust and the estate was encumbered with the great weight of death taxes and expenses. There was no evidence Mrs. Rose was aware of the trust's terms or was consulted in advance concerning it. Against this background several persons testified Mr. Rose said he had fixed his will so his wife would get as little as possible.

In view of the preceding evidence and the fact that Mr. Rose's earlier will, which Mrs. Rose could elect to take against, closely resembled the inter vivos trust she could not reject, it does not seem unreasonable for the court to conclude Mr. Rose meant what he reportedly said. Although Mr. Rose survived the execution of the trust for a considerable length of time, it is only logical that the controlling factor in determining whether the transfer was made in contemplation of death was his own appraisal of his remaining life span. There is evidence Mr. Rose expected and had reason to expect an immediate departure from this world.

90

 Where a determination of the case depends largely upon the facts found in the record, the findings and judgment of the trial court, in chancery and nonjury cases, will not be disturbed by the reviewing court if there is any evidence in the record to support such findings, and where the testimony is contradictory, a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court which saw and heard the witnesses, unless the findings are manifestly against the weight of the evidence, the chancellor's conclusions in nonjury cases being entitled to the same weight as a jury verdict. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518. Decedent's intent and whether the transfer was in immediate contemplation of death were questions of fact for the trial court and there is no reason for disturbing its conclusions since there was an evidentiary basis for its holding.

Appellants next argue that the Illinois "Dead Man Statute" applied and that Mrs. Rose's testimony was incompetent under that statute. Appellee answered that the Missouri "Dead Man Statute" applied, that Mrs. Rose's testimony was admissible over insufficient objections, that Mrs. Rose's testimony was admissible under Illinois Law, and that Mrs. Rose's testimony was cumulative and nonprejudicial.

 The trial court admitted Mrs. Rose's testimony, but later held it was cumulative and not essential to the decision. Assuming Mrs. Rose's testimony was incompetent, her testimony was much the same as that of the other and disinterested witnesses; and their uncontradicted testimony is that Mr. Rose said he was going to leave his wife very little. While Mrs. Rose testified extensively, there is nothing that compels the conclusion that the trial judge treated her testimony as anything other than what he held it to be. If the testimony was incompetent and its admission was error, the error was harmless. McFail v. Braden, 19 Ill2d 108, 166 NE2d 46.

However, assuming the trial court had considered the testimony of Mrs. Rose to be competent, in the view that we take of this case, its ruling would not have been error. Since we are reversing the trial court's findings that the inter vivos trust was testamentary, this leaves only the cause of action against the defendant as trustee of the inter vivos trust. When an executor sues or is sued in other than its representative capacity as executor of the estate, the Illinois Dead Man's Act does not bar testimony of interested persons. Michna v. May, 80 Ill App2d 281, 225 NE2d 391; Lasky v. Smith, 407 Ill 97, 94 NE2d 898. Therefore, the "Dead Man's Act" did not apply to defendant in its capacity as trustee of the inter vivos trust.

 Appellant's argument that the beneficiaries were necessary parties is misdirected. The beneficiaries are necessary parties herein, but they are not indispensable parties; and the court has discretion in determining whether to proceed without the joinder of necessary parties. Sections 24 and 26, c 110, Ill Rev Stats 1963. Village of Lansing v. Sundstrom, 379 Ill 121, 39 NE2d 987; Anderson v. Elliott, 1 Ill App2d 448, 117 NE2d 876; Cody Trust Co. v. Hotel Clayton Co., 293 Ill App 1, 12 NE2d 32. The same conclusion would follow if the beneficiaries cannot be joined, and the method suggested by appellant under section 14, chapter 110, Ill Rev Stats (1963) is inapplicable for the court had jurisdiction of only the trustee, not the trust property or trust res, and the beneficiaries were out of state and not amenable to process. Moreover, in a situation, as here, where the beneficiaries have already been paid their shares and may have to repay the trustee, it is difficult for a trustee to argue as appellant does, for appellant might have joined the beneficiaries by third-party complaint if it were possible to do so. Section 25, c 110, Ill Rev Stats (1963).

■ Finally, in holding the trust voidable as a fraud on Mrs. Rose's marital rights, it must be determined what amount the appellant should pay to the estate. If Mrs. Rose's rights as surviving spouse are to be protected, her renunciation must give her what she would have received under Illinois law had Rose died intestate and there been no trust created; it also must give her or the portion which she so receives no greater obligation for taxes, costs of administration or claims that she or her portion would have been obligated for, had Rose died intestate and no trust been created; she likewise should receive or be charged with her portion of any interim increases or decreases in the entire properties between Mr. Rose's death and her renunciation and should also receive one-third of the net income and profits of the trust corpus and assets of Clarence Rose's estate and be charged with any income she has received therefrom. This holding necessarily precludes allowances of interest and in the absence of any express authority, the allowance of attorney fees is also unjustified.

That portion of the trial court's decree holding that the trust created by Clarence S. Rose was a testamentary disposition of property voidable at the option of the plaintiff is reversed, and that portion of the decree holding that the trust was a fraud of Louise Rose's rights as a widow and thus voidable is affirmed. This cause is remanded and the trial court is directed to enter such orders as are or will be consistent herewith.

Affirmed in part, reversed in part, and remanded with directions.

EBERSPACHER and GOLDENHERSH, JJ., concur.