(No. 41783.—

Louise W. Rose, Appellee, *vs.* St. Louis Union Trust Company *et al.*—(St. Louis Union Trust Company, Appellant.)

*Opinion filed November 26, 1969.*

C. E. HEILIGENSTEIN and W. E. ACKERMAN, both of Belleville, for appellant.

HOAGLAND, MAUCKER, BERNARD & ALMETER, of Alton, (JAMES K. ALMETER, of counsel,) for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Louise W. Rose, sued individually and as co-executor of the estate of her deceased husband, Clarence S. Rose, to set aside a trust created by decedent, and to order the St. Louis Union Trust Company to transfer to her assets of her husband's estate in an amount necessary to satisfy plaintiff's marital rights under her renunciation of decedent's will.

The circuit court of St. Clair County, after a trial without a jury, entered a decree in plaintiff's favor holding the *inter vivos* trust to be an invalid testamentary disposition and also a fraud on plaintiff's marital rights. Defendants appealed, and the appellate court partially reversed and remanded, finding that the trust was not invalid as a testamentary disposition but was a fraud upon plaintiff's marital rights, and awarded her what she would be allowed under Illinois law if decedent died intestate. (*Rose v. St. Louis Union Trust Co.,* 99 Ill. App. 2d 81.) We granted leave to appeal.

Briefly stated, the factual situation is that plaintiff, Louise Rose, and the testator, Clarence S. Rose, were mar-

ried in 1927. It was a second marriage for the testator, and there were no children by that marriage. The testator, however, had two children by a prior marriage, defendants C. Stephen Rose, Jr. and Henrietta Rose Passega. In 1955 the testator, Clarence Rose, while a resident of Missouri, executed a will providing that his two children were to share 60% of his estate and that plaintiff was to receive the income from the remaining 40% of the estate for life, with a noncumulative right to $2,000 principal annually, and upon her death this 40% of the residue was to be divided equally between his children.

In March, 1956, the testator sold his business, and sometime later that year he moved to East St. Louis. In July, 1958, while a resident of East St. Louis, he executed an irrevocable *inter vivos* trust with defendant St. Louis Union Trust Company as trustee, and transferred substantial assets into the trust. Under that trust the settlor was to receive the income thereon for life and upon his death the trustee was to divide 60% of the assets equally between his children and hold the remaining 40% in trust for his wife on much the same terms as the prior testamentary trust under the 1955 will. In September, 1958, the testator executed a codicil to his will. He eliminated the testamentary trust provision in the 1955 will respecting 40% of the property, and substituted a provision whereby the 40% became part of the *inter vivos* trust.

There is no evidence in the record of what property, if any, passed to plaintiff by joint tenancy, or the amount of assets in the estate or in the trust, except the court's statement, "The assets transferred constituted the bulk of decedent's estate." The defendant trustee has made payments pursuant to the trust totalling 60% of the trust estate to the decedent's children, and has paid State and Federal inheritance taxes computed on the basis of the validity of the trust and unrenounced will and codicil.

We believe the appellate court's disposition of the issues in this case was adequate except for its holding that the *inter vivos* trust was a fraud on plaintiff's marital rights. That determination, in our opinion, cannot properly be made on the basis of the record presently before the court.

As stated by the appellate court: "The trust was negotiated and executed in St. Louis, Missouri, and was administered in Missouri by defendant, a Missouri corporation with its principal place of business in Missouri. The trust corpus was kept in Missouri and the trust agreement used Missouri law to determine rights to the corpus should the grantor die without his wife or children surviving him. Plaintiff alleged that Missouri law governed the trust's validity and the case was tried and determined on this basis." 99 Ill. App. 2d 81, 85.

We agree that Missouri law controls the validity of the trust. In our judgment that trust, created in 1958, some five years before the settlor died, was a valid *inter vivos* trust, even though he retained a life estate and was given certain "courtesy consultation" rights by the trustee, as testified to by the bank vice-president. (*West* v. *Miller* (7th cir., 1935), 78 F.2d 479, *cert*. den. 296 U.S. 333; see 49 A.L.R.2d 525.) That determination, however, does not resolve the question whether the trust was a fraud on plaintiff's marital rights. Under Missouri law transfers by *inter vivos* trusts, where they were a fraud on the widow's marital rights, have long been the subject of equity jurisdiction. (*Edgar* v. *Fitzpatrick* (Mo. 1963), 369 S.W.2d 592, 599, reversed on other grounds 377 S.W.2d 314.) Moreover, that rule was incorporated in the Missouri statute, section 474.150(1), invoked by plaintiff here, which statute provides: "Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in the estate, shall, at the election of the surviving spouse be treated as a testamentary disposition and may be recovered

from the donee and persons taking from him without adequate consideration and applied to the spouse's share, as in the case of his election to take against the will."

In construing the statute and equitable doctrine on which it is based, the Missouri cases have held unequivocally that merely because a trust is deemed void as to the widow's right does not necessarily make it void as to the rights of other beneficiaries. However, the cases have differed on what circumstances could be regarded as a fraud on marital rights. (*Wansrath* v. *Kappel* (Mo., 1947), 201 S.W.2d 327, 329, 331; 154 A.L.R. 1164.) Factors emphasized in determining whether there was a fraud on marital rights are the intent to defraud, the proximity in time between the transfer and the testator's death, the proportion of the settlor's property transferred to the trust, the absence of consideration, and the fairness to the wife if the trust is operative. (*Edgar* v. *Fitzpatrick* (Mo., 1963), 369 S.W.2d 592, 600; 377 S.W.2d 314, 317 (1964).) Thus, in the *Fitzpatrick* case the court found the *inter vivos* trust in favor of testator's children was not in fraud of his wife's marital rights where the estate amounted to approximately $66,000 and the sum transferred to the children constituted approximately one third of his assets.

In *Potter* v. *Winter* (Mo., 1955), 280 S.W.2d 27, 36, where there was no evidence that the indenture was made in contemplation of impending death, no surreptitious execution of the conveyance, an inference that the widow knew the terms of the instrument, and substantial provisions for the wife, the court held the evidence negated any fraud on her marital rights. See also *Reinheimer* v. *Rhedans* (Mo., 1959), 327 S.W.2d 823, 828.

In contrast, in *Merz* v. *Tower Grove Bank & Trust Co.*, 344 Mo. 1150, 130 S.W.2d 611, where there was evidence that the settlor's sole purpose was to defeat the marital rights of the wife, and the trust itself made it apparent that he intended to place the major portion of his property be-

yond his wife's control, that he knew death was imminent, and in fact died two weeks after executing the trust, it was deemed a fraud on marital rights. See also *Hastings* v. *Hudson,* 359 Mo. 912, 224 S.W.2d 945; *Breshears* v. *Breshears,* 360 Mo. 1057, 232 S.W. 2d 460, 463.

In the case before us, although death was not imminent when the trust was executed—the settlor died some five years later—the provisions of the trust itself together with the will and codicil, apart from the testimony of any witnesses, reflect an intention to give the bulk of his estate to his children. However, since the record is devoid of evidence as to the amount of property decedent and his wife held in joint tenancy, and how much of decedent's total assets were placed in the trust the cause must be remanded. On remand, it should be ascertained whether decedent had a fraudulent intent, what portion of decedent's total property was available to his widow, and all other factors deemed operative by the Missouri courts in determining whether the trust was in fraud of plaintiff's marital rights should be considered.

The judgment of the appellate court is affirmed. The trial court will afford the parties a further hearing upon the issue whether the trust is voidable by plaintiff as a fraud upon her marital rights, including therein consideration of the factors above noted. Should it again be determined that the trust is invalid as to plaintiff, the directions contained in the appellate court opinion will be applicable.

*Affirmed, and remanded to the circuit court, with directions.*