2 Ill. App.3d 821 (1972)
277 N.E.2d 739
In re ESTATE OF BERNICE DILLON MONTGOMERY, Deceased  (EARL L. MONTGOMERY, ADMR., Petitioner-Appellant,
v.
ANDRICE F. MICHAELS, et al., Respondents-Appellees.)
No. 71-51.
Illinois Appellate Court  Second District.
January 10, 1972.
*822 Ross S. Welch, of Chicago, for appellant.
Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee.
Judgment affirmed.
Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:
This appeal is prosecuted from an order entered February 18, 1971, by the Circuit Court of Lake County that dismissed the appellant's petition to discover and recover certain assets brought by him as administrator of the estate of his deceased wife, Bernice Dillon Montgomery and individually pursuant to Section 183 of the Probate Act (Ill. Rev. Stat., 1969, ch. 3, sec. 183)
On September 1, 1970, Letters of Administration were issued to Earl L. Montgomery, the appellant, in the estate of his deceased wife. On September 10, Montgomery petitioned the court for issuance of citations on the First National Bank of Chicago and the First National Bank of Highland Park relative to certain savings accounts established at those institutions by the decedent in her name as trustee for the benefit of Andrice Fleming Michaels and Robert Dillon Fleming, her children by a prior marriage. Citation writs and summons were issued pursuant to the petition and a hearing held on November 5, 1970.
The passbooks, ledger sheets and signature cards of the particular accounts were admitted into evidence on the stipulation of the parties. Those records indicate that four separate accounts had been established at the *823 First National Bank of Chicago, each in the name of Bernice Dillon Montgomery as Trustee. Two of those accounts, in the aggregate amount of $16,552.15, provided on the signature card that the deposits in the account were made for the benefit of Andrice Fleming Michaels "to whom or to whose legal representative said deposits or any part thereof, together with the interest thereon, may be paid in the event of the death of the ... trustee." The two other accounts at the First National in Chicago, in the same amount, provided that they were for the benefit of Robert Dillon Fleming with identical provisions in regard to payment after the death of the trustee.
Two of the accounts at the First National Bank of Highland Park, each in the amount of $6,033.74, were in the name of the decedent as trustee for the benefit of, and payable on her death to, Andrice Michaels and Robert Fleming respectively. The last two accounts, also at the Highland Park bank, were each in the amount of $8,822.98 and in the name of the decedent as trustee for the two children but with no specific provision as to payment after her death.
In his petition, the appellant alleged that the trusts were "illusory and invalid" since his wife had full control over the accounts during her lifetime and possessed all the incidents of complete ownership including the right to withdraw all of the funds deposited at any time. He further alleged that the trusts constituted virtually all of his wife's assets and were a fraud on his marital rights and that he should be accorded the same rights to the accounts that he would have if they were held in her own name.
At the conclusion of the hearing, the trial court took the matter under advisement and then entered the order from which this appeal was taken. That order found that the trusts were not illusory and ordered the two banks to pay the funeral bills of the decedent and distribute the balance of the proceeds to the named beneficiaries.
The Supreme Court, in 1965, ruled that "Totten" trusts (so-called from the case of Matter of Totten, 179 N.Y. 112, 71 N.E. 748) were valid in Illinois in the case of In re Estate of Petralia (32 Ill.2d 134). In that case, Antonio Petralia opened a savings account on November 8, 1948 at the First National Bank of Chicago as trustee for the benefit of his daughter, Domenica DiMaggio. The signature card provided:
"All deposits in this account are made for the benefit of Domenica DiMaggio.
To whom or to whose legal representative said deposits or any part thereof, together with the interest thereon, may be paid in the event of the death of the undersigned Trustee."
The evidence showed that Petralia kept the savings account passbook in *824 his possession and made deposits and withdrawals from the account during his lifetime. The administrator of his estate contended that the mere execution of the signature card was insufficient to create a valid trust and that Petralia had attempted to make a testamentary disposition of the account without conforming to the statute of wills. The Supreme Court rejected that contention and said as follows:
"It is true that Antonio Petralia, as settlor and trustee, retained extensive control over the savings account trust which he established. However, in this respect it is not significantly different in substance from other revocable inter vivos trusts which have been held valid in this and other jurisdictions. (citations omitted). The nature of the beneficiary's present interest under such trusts is well stated in I Scott, The Law of Trusts, 353-354:
`The declaration of trust immediately creates an equitable interest in the beneficiaries although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation.' The fact that the beneficiary's actual enjoyment of the trust is contingent on Antonio Petralia's death without first having revoked the trust by withdrawing the balance in the account does not negate the existence of a present interest in the plaintiff during her father's lifetime, even though that interest may have been highly destructible.
We conclude that the instrument executed by Antonio Petralia on November 8, 1948, was sufficient to create a valid and enforceable inter vivos savings account trust. In so holding we accept the position adopted by the American Law Institute in Sec. 58 of the Restatement (Second) of Trusts: `Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.'"
 1 The language of the signature cards in the Petralia case is identical to that used in the four accounts established at the First National Bank of Chicago by Bernice Montgomery. Although the accounts in Highland Park did not employ the same wording, we feel that there was sufficient evidence to show that those accounts were intended to create a savings account trust as described by the American Law Institute. In view of the Petralia case and other earlier decisions, we feel that these records evidenced the creation of valid inter vivos trusts even though the settlor *825 was the trustee and retained the right to withdraw all of the funds from the account at any time prior to her death. The beneficiaries of those accounts, the children, did acquire a present equitable interest in the accounts even though that interest was postponed until the death of the trustee and was subject to divestment prior to that event. In re Estate of Petralia, 32 Ill.2d 134, 137; Farkas v. Williams, 5 Ill.2d 417, 433.
 2 We must next consider if a savings account trust can be effective to deprive a surviving spouse of his marital rights of inheritance. Generally, a spouse may dispose of property during his or her lifetime, and thus deprive the survivor of a right of inheritance, unless the disposition is colorable, illusory and "tantamount to fraud". Holmes v. Mims, 1 Ill.2d 274, 279; Padfield v. Padfield, 78 Ill. 16, 19.
In the case of Smith v. Northern Trust Co. (322 Ill. App. 168), cited by the appellant, the husband, Elmo Smith, transferred virtually all of his property into trust. Under the provisions of the trust agreement, Smith was to receive all the income for life with 80% of the corpus to be distributed to his children from his first marriage upon his death and the balance to his wife. He later amended the trust and left all of the trust balance to his children. Smith also reserved the right to supervise the investment of the trust assets and to amend or revoke the agreement at any time. Smith died in 1942 and left assets insufficient to pay the expenses of his estate. His widow brought suit against the trustee and the beneficiaries claiming that the trust was a device to defraud her of her rights as a surviving spouse and that the beneficiaries took advantage of Smith's advanced years to sign the agreement on the basis of misrepresentations. The court of review held that the trust was, under the circumstances, merely colorable and illusory and invalid as to the rights of the widow to share in his estate.
 3-5 The form of the agreement does not, however, per se constitute a trust illusory or colorable and a fraud on the marital rights of a surviving spouse. Burnet v. First Nat. Bank, 12 Ill. App.2d 514, 527. Hence, the mere creation of the savings account trusts by Bernice Montgomery during her lifetime did not, of itself, constitute a fraud on the appellant. "Whether the form of trust employed is merely colorable and illusory, and a fraud upon the marital rights of the spouse, must be determined from the particular facts in each case." Burnet v. First National Bank, 12 Ill. App.2d 514, 528.
There were only two witnesses to testify at the citation hearing before the trial court. A trust officer of the Highland Park bank testified relative to the accounts held by them. The appellant himself testified that he was married to the decedent for 27 years prior to her death on June 27, 1970. He further testified that he was not aware of the existence of the savings *826 accounts until he discovered the passbook in the basement of the marital home after the death of his wife and that those accounts were virtually all of her property. No other proof was offered.
 6 We do not feel that the failure to disclose the existence of the trusts to the appellant constitutes, of itself, sufficient evidence to show that they were tantamount to fraud or invalid as to his rights of inheritance. In the recent case of Dennis v. Dennis, 271 N.E.2d 55, the husband transferred various assets owned by him (but not all) into trust shortly before his marriage for the ultimate benefit of the children of his first marriage. His wife was unaware of the existence of the trust until after his death and the court, in upholding the validity of the trust, stated on page 60 that "* * * there was no duty to disclose the trust or amendment to her either before or after marriage, and consequently plaintiff's complaint contains no sufficient allegations of specific facts or circumstances indicative of fraud * * *."
 7 The appellant has cited numerous cases from other jurisdictions contrary to the position that we have adopted in this case. However, we feel that the law in Illinois is clear that a bank deposit trust is, absent evidence that it is illusory or tainted with fraud, effective even against the claim of a surviving spouse.
We conclude that the savings account trusts established by Bernice Montgomery during her lifetime were valid inter vivos trusts and that there was no evidence to show that they were either colorable or illusory. Therefore, the judgment order of the trial court will be affirmed.
Judgment affirmed.
SEIDENFELD and GUILD, JJ., concur.