H. FRANKLIN JOHNSON, Plaintiff-Appellant, *v.* LaGRANGE STATE BANK *et al.*, Defendants-Appellees.

First District (4th Division) Nos. 62687, 63031 cons.

Opinion filed July 7, 1977.

Harvey J. Barnett, Robert R. Tepper, and Robert I. Berger, all of Chicago (Rosenthal and Schanfield, of counsel), for appellant.

Robert C. Hultquist, of Chicago (Moriarty, Rose & Hultquist, Ltd., of counsel), for appellees.

Raymond F. Simon, guardian ad litem, of Chicago (Raymond F. Simon and Gemma Allen, of counsel), for unborn children of appellee Catherine Reed.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, H. Franklin Johnson, commenced an action in the circuit court of Cook County to set aside an *inter vivos* trust established by his late wife, Eleanor Johnson (decedent), insofar as it deprived him of his marital rights. By his suit, plaintiff sought to impose a constructive trust, on the trust assets, to the extent of his claim. In his amended complaint, plaintiff contended that, as the surviving spouse, the trust was illusory, colorable and fraudulent as to him and thus he was entitled to receive a statutory one-half share of the original corpus of the trust (Ill. Rev. Stat. 1971, ch. 3, par. 16). The corpus of the trust had an approximate value of $200,000 at the time of decedent's death. Judgment was entered for defendants and plaintiff was assessed costs and attorneys' fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41).

The principal defendants are the successor trustee, LaGrange State Bank, and trust beneficiaries Libby Matousek, decedent's mother, decedent's sister, Helen Holmes, and decedent's niece, Catherine Reed.[1] The court appointed a guardian *ad litem* for the unborn children of Catherine Reed.

Plaintiff's amended complaint was in three counts. Count I alleged, *inter alia*, the trust to be an illusory and colorable transfer of the trust property and a fraud upon his marital rights. Count II alleged that the decedent established the trust with the intention of defeating plaintiff's marital interest in the settlor's personal estate. Count III, in addition to the previous allegations, averred the decedent acted in an intentional, deliberate and fraudulent manner for the purpose of denying plaintiff his statutory share of the decedent's estate.

Defendants filed a motion to dismiss the amended complaint based upon plaintiff's failure to renounce his wife's will as required by applicable statutes (although allegations contained in each count of the amended complaint asserted a proper renunciation was accomplished), and further for plaintiff's failure to allege specific acts of fraud on the part of his deceased wife. The court dismissed counts I and II of the amended complaint, but allowed count III to stand.

Trial was held without a jury. At the conclusion of plaintiff's case, judgment was entered for the defendants. The trial court found that the allegations that the decedent committed a fraud upon plaintiff were untrue, made in bad faith and without reasonable cause, and assessed attorneys' fees and costs against plaintiff. Plaintiff contests the correctness of these dispositions.

We reverse the trial court and remand with directions.

---

[1] Certain charitable organizations are beneficiaries under the trust provisions and they were named defendants in the proceeding, but took no active part in this litigation.

## I

The record discloses that at the time of her death on September 18, 1972, decedent had been married to plaintiff for 35 years. No children were born of the marriage. Plaintiff was an exceptionally generous husband. A very wealthy man, he frequently gave decedent substantial gifts of money and securities. Plaintiff was the source of substantially all of the trust assets involved herein, which consist of negotiable instruments. No real estate is involved. In addition, he provided her with a regular liberal cash allowance and continued to do so until her death. Plaintiff also provided a monthly allowance for Mrs. Johnson's aged and dependent mother.

It appears Mrs. Johnson recognized and appreciated plaintiff's business acumen and relied upon his advice in making investments as well as in managing the accumulated gifts which he gave her. As the the trial court found, the record shows "there was no estrangement or feeling of antipathy of one spouse to the other."

In 1966, Mrs. Johnson, learning that she had cancer, underwent surgery. She later discovered her illness was terminal. In 1969, the Johnsons had new wills prepared, which provided for the contingency that the spouse might not survive the testator. In Mr. Johnson's will, 20% of his estate was left to Mrs. Johnson's relatives if she did not survive him. In Mrs. Johnson's will, her entire estate was left to her family, if Mr. Johnson did not survive her. On September 24, 1970, Mrs. Johnson had her attorney prepare a new will for her, which she executed. This will provided for the creation of a testamentary trust containing substantially the same provisions set forth in the *inter vivos* trust which is the subject of this proceeding.

On February 11, 1972, about seven months prior to her death and while domiciled in Illinois, decedent executed a revocable *inter vivos* trust. In it she named herself trustee. The trust provided that the entire income would be payable to decedent during her lifetime. Further, decedent reserved the power to invade the principal of the trust corpus as she, in her sole discretion, saw fit. As trustee, she retained broad powers to invest, reinvest, divide, and distribute the trust property. She retained the right to revoke the trust or to alter, amend or modify the trust provisions in any manner. Upon her death, the trust designated defendant LaGrange State Bank as successor trustee and provided for a system of distribution of the assets of the trust to Eleanor Johnson's mother, sister, niece and various charities. Upon the happening of certain contingencies, the unborn descendants of decedent's niece were to take a share. The sole provision in the trust instrument benefitting plaintiff was a direction to the successor trustee to pay so much of the income and principal of the trust

estate to "meet any emergency situation for the reasonable support, medical and burial expense of my husband, H. FRANKLIN JOHNSON. * * * However, the trustee, before making such payment of income and/or principal to or for the benefit of my husband * * *, shall consider the other resources available to [him] and the present and prospective needs of my mother and sister."

On the same day that the trust instrument was executed by her, decedent also executed a will specifically revoking all prior wills. Under the terms of the will, decedent left her apparel and jewelry to her sister and her personal effects and any real estate to plaintiff. The residuary clause of the will poured over the balance of her estate into the trust, to be administered by the successor trustee in the manner set forth in the trust instrument. Subsequent to executing these documents, decedent sold her Illinois home and went to Florida where she continued to reside until her death.

The gravamen of plaintiff's case is that, by its terms, the trust declared by his wife is illusory and colorable as to him and constitutes a fraud on his marital rights. Plaintiff argues that the holding of the Illinois Supreme Court in *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, dictates that the trust be found invalid insofar as it defeats the one-half statutory share to which he would have been entitled had the same property passed under the February 11, 1972, will. Before reaching this contention, however, there are several preliminary matters to be considered.

## II

The record in this case contains an order of the Florida circuit court that Mrs. Johnson was domiciled in Florida at the time of her death and plaintiff was domiciled in Illinois. This order was affirmed on appeal. (*In re Estate of Johnson* (Fla. App. 1975), 312 So. 2d 268 (per curiam) (mem.).) Plaintiff does not question the the propriety of that determination. The record also shows that probate proceedings were instituted in Florida, and plaintiff sought to renounce the will and obtain a statutory share in lieu thereof in those proceedings. During oral argument of this cause, counsel for defendants and the guardian *ad litem* indicated that the Florida probate proceedings had been terminated after plaintiff's attempt to renounce the will was rejected. It is also clear from the record that the will in question has been filed in Illinois. By agreement, the parties have not sought to admit this will to probate although plaintiff indicates that he has attempted to renounce the will in Illinois.

■■ The interest of the surviving spouse in personal property of the deceased, which is gained by renunciation of the will, is governed by the law of the domicile of deceased at the time of death. (Restatement

(Second of Conflict of Laws §265 (1971).) The question is whether such principle should be applied to this case, thereby relegating plaintiff to reliance on Florida law, where his claim had been previously rejected.

■■ We conclude that decedent's domicile at the time of death is not controlling in determining the threshold consideration of whether Illinois law should be applied. The *inter vivos* trust was created in this State, the trust *corpus* remains in this State, plaintiff was domiciled here at the time of decedent's death, and the principal defendants are also located in this State. *National Shawmut Bank v. Cumming* (1950), 325 Mass. 457, 91 N.E.2d 337; see *Bolton v. Barnett* (1923), 131 Miss. 802, 95 So. 721.

■■ Defendants and the guardian *ad litem* have suggested that certain sections of the Probate Act require the renunciation of the decedent's will in Florida where probate occurred. (Ill. Rev. Stat. 1971, ch. 3, pars. 54 and 89b.) As we have already noted, the interests predominantly affected by the *inter vivos* trust are those of individuals in Illinois, and plaintiff does not seek to gain a share of such trust assets through a testamentary disposition. We believe the law pertaining to the question of renunciation is to be considered by the law of this State. *In re Estate of Clark* (1968), 21 N.Y.2d 478, 236 N.E.2d 152, 288 N.Y.S.2d 993.

Nor is it a condition precedent that the will be first admitted to probate in Illinois in order to allow a legally effective renunciation. (Ill. Rev. Stat. 1971, ch. 3, pars. 16, 17.) In the case of *In re Estate of Meskimen* (1968), 39 Ill. 2d 415, 235 N.E.2d 619, the surviving spouse sought to attack a trust created by his wife as a fraud upon his marital rights in a proceeding to admit her will to probate. The supreme court held that this proceeding was not appropriate for an attempt to raise this issue. Rather, the court cited two decisions which involved, in part, actions to impose a constructive trust, as plaintiff seeks to do here, where such claim could be advanced. See *Burnet v. First National Bank* (1957), 12 Ill. App. 2d 514, 140 N.E.2d 362; *Smith v. Northern Trust Co.* (1944), 322 Ill. App. 168, 54 N.E.2d 75.

We further note that under the facts of this case, a renunciation by plaintiff of his wife's will prior to this proceeding would have operated as a useless act. Practically speaking, Mrs. Johnson left her husband nothing under her will. The entire probate estate was insignificant in comparison to the corpus of the *inter vivos* trust. Thus, if plaintiff had effectively renounced his rather limited share under the will, there would have been no property on which to claim his one-half forced share. Only after he proved his wife's fraud on his marital rights, thus rendering the trust illusory as to him, could there be some property upon which he could claim his interest. Accordingly, we now direct our attention to the primary contention concerning the applicability of *Montgomery v. Michaels* to this case.

## III

Defendants argue that, absent proof that the intent and conduct of the late Eleanor Johnson was tantamount to actual fraud, plaintiff's assertion that a fraud was committed upon his marital rights must fail. Primarily, defendants rely upon *Rose v. St. Louis Union Trust Co.* (1969), 43 Ill. 2d 312, 253 N.E.2d 417.

■■ Were we to agree with defendants that a showing of common law fraud is necessary to sustain a finding of fraud on plaintiff's marital rights, we would hold that plaintiff's evidence failed to meet the burden of proof. Decedent's acts in executing the trust were not fraudulent in the conventional sense. As the trial court indicated, the evidence disclosed that the Johnsons had a warm and loving marriage. Decedent had worthy motives in providing financially for her mother, sister, niece and charities upon her death. As the trial court found, plaintiff supported his wife unstintingly and generously during their marriage. The evidence clearly indicates that plaintiff gave decedent the assets that became the trust corpus. We attach little credence, as did the trial court, to plaintiff's testimony that he only parted with this wealth in the expectation that it be returned to him upon his wife's death. There is evidence in the record that plaintiff had some knowledge of decedent's contract with her attorney for the purpose of preparing a trust instrument and a will and the plaintiff desired not to involve himself in that matter. The most deprecatory statement that can describe decedent's conduct toward her husband in executing the trust declaration is that to some extent she kept her actions secret, and plaintiff was not made privy to the terms and provisions of the trust. Indeed, there is no ample evidentiary basis shown in the record to suggest that decedent's conduct in establishing the *inter vivos* trust encompassed any degree of common law fraud.

■■ However, we do not believe this type of proof is required of the plaintiff in these proceedings. We find that the above factors are irrelevant because the test to be applied in determining what constitutes a "fraud on marital rights" is other than that used to ascertain common law fraud. (*Stoxen v. Stoxen* (1972), 6 Ill. App. 3d 445, 285 N.E.2d 198.) Rather, we view the expression "fraud on marital rights" to be words of art, although it is a rather unfortunate phrase since the incorporation of the word "fraud" adds rampant connotations.

Two approaches by courts in determining if one spouse has committed a "fraud" on the marital rights of his or her surviving spouse through the procedure of establishing an *inter vivos* trust illustrate the position of the parties to this appeal. These approaches are represented by the decisions of the Illinois Supreme Court in *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465, and *Rose v. St. Louis Union Trust Co.* (1969), 43 Ill. 2d 312, 253 N.E.2d 417.

In *Montgomery*, the decedent, during her lifetime, created eight savings accounts in various banks. Each differed somewhat in its terms, but all were essentially the same in that she was named as trustee and the accounts were for the benefit of her children by a prior marriage. All but two of the accounts specifically provided that they were to be paid to the child or children named therein on her death. She retained total and complete control over all of these accounts during her lifetime, and until her death continued to make deposits and withdrawals from the accounts.

Decedent died intestate. Her surviving husband filed a citation petition alleging that the trusts were invalid as illusory and a device to defraud him of his marital rights. He asserted that if the trusts were held to be valid, his statutory right to one-third of the decedent's personal estate would be defeated. (Ill. Rev. Stat. 1969, ch. 3, par. 11.) He asked, among other things, that the court enter an order finding the trusts to be illusory and invalid and that the bank accounts were the property of the decedent and that he be granted his statutory share.

■■ The trial court in *Montgomery* found the savings-account trusts were not illusory, and that the balances in the accounts should be paid to the named beneficiaries. The appellate court affirmed. (2 Ill. App. 3d 821, 277 N.E.2d 739.) On leave to appeal, the supreme court reversed, declaring that while the validity of a savings-account trust or "Totten Trust" has been upheld (*In re Estate of Petralia* (1965), 32 Ill. 2d 134, 204 N.E.2d 1; *Farkas v. Williams* (1955), 5 Ill. 2d 417, 125 N.E.2d 417, 125 N.E.2d 600; *Gurnett v. Mutual Life Insurance Co.* (1934), 356 Ill. 612, 191 N.E. 250), such a trust is ineffective to defeat a surviving spouse's statutory or forced share in the estate of his deceased spouse.

In finding for the plaintiff, the supreme court adopted what we will refer to as a "retention of ownership" test, and stated:

> "In the case at bar the settlor was also the trustee. During her lifetime she retained absolute, unqualified control over the bank accounts, and possessed and exercised all incidents of complete ownership, including the right to receive interest payable thereon and withdraw the principal thereof. The enjoyment of the proceeds of the accounts by the beneficiary or beneficiaries named therein would arise only upon the death of the settlor-trustee with the accounts remaining intact.
>
> Under these circumstances, the expressed statutory policy of protecting a surviving spouse's statutory share in the estate should prevail, *regardless of the intent* of the deceased spouse in creating the savings-account trust." (Emphasis supplied.) 54 Ill. 2d 532, 536, 301 N.E.2d 465, 467.

In contrast to the "retention of ownership" test adopted by the court in *Montgomery* is the "intent" or "balance of equities" test adhered to by the

court in its earlier decision in *Rose v. St. Louis Union Trust Co.* (1969), 43 Ill. 2d 312, 253 N.E.2d 417. In *Rose*, the surviving spouse challenged the irrevocable *inter vivos* trust set up by her late husband as a fraud on her marital rights. Under conflict of laws principles, the Illinois Supreme Court concluded that the case was governed by Missouri law which considered the existence of "the intent to defraud, the proximity in time between the transfer and the testator's death, the proportion of the settlor's property transferred to the trust, the absence of consideration, and the fairness to the wife if the trust is operative." (43 Ill. 2d 312, 316, 253 N.E.2d 417, 419.) In remanding the case, the supreme court directed the trial court to weigh these equities in reaching its decision.

Plaintiff urges us to apply *Montgomery v. Michaels* to the case at bar, while defendants argue that *Montgomery* is inapposite and that *Rose v. St. Louis Union Trust Co.* must control the decision in this case. We agree with plaintiff that the situation before the court in *Montgomery* is directly parallel to that of the instant case. In addition, we find that even if we apply the *Rose* standards, plaintiff must prevail.

As in *Montgomery*, the decedent in the instant case set up a revocable trust in which she declared herself trustee and retained complete ownership and control over the trust property during her lifetime. In the instant case, decedent reserved the entire income and unfettered discretion to invade the principal. She had the power to revoke, alter, or amend the trust during her life. As trustee, she retained broad powers to invest, reinvest, divide and distribute the trust property. The provisions of the trust relating to third persons became operative only upon her death.

■■ In *Montgomery*, the decedent died intestate and thus no provision was made for the surviving spouse. In the present case, decedent provided only minimally for her husband. Though she left him her real estate under the provisions of her will, the only real estate decedent owned was their family residence which had been sold prior to her death. Under the trust provisions, decedent gave the successor trustee the discretion to invade the trust corpus for the emergency needs of her husband with the proviso that the trustee should bear in mind the ample financial ability of the husband to care for himself. In short, decedent virtually prevented her husband from taking any of the property passing under her will and trust. Thus, we are presented here with a factually similar situation as that before the court in *Montgomery*: a decedent, who in utilizing the trust device, enjoyed complete and unfettered control over her property during life, and only parted with that control upon death. Moreover, the trust operated to effectively exclude the husband, who would have received a sizeable statutory amount had the property passed under her will.

■■ Defendants argue that the *Montgomery* decision was limited to

Totten trusts only and is thus inapplicable to other kinds of *inter vivos* trusts. They premise this argument on the court's phrasing of the issue in *Montgomery:*

> "The question in the case at bar is whether a 'Totten Trust' is sufficiently testamentary in nature that by analogy the statutory policy of permitting a surviving spouse to renounce under the decedent's will and share in the proceeds of such estate should be applicable to such trust to the same extent as to an estate passing under a will." 54 Ill. 2d 532, 535, 301 N.E.2d 465, 466.

We find defendants' argument untenable since the court in *Montgomery* cited *In re Estate of Petralia* (1965), 32 Ill. 2d 134, 204 N.E.2d 1, as standing for the proposition that a savings-account trust is no different in substance from other revocable *inter vivos* trusts. Furthermore, the *Montgomery* court based its decision in part on prior cases which did not involve Totten trusts. See, *e.g., Farkas v. Williams* (1955), 5 Ill. 2d 417, 125 N.E.2d 600; *Newman v. Dore* (1937), 275 N.Y. 371, 9 N.E.2d 966.

Defendants next argue that the appellate court's decision in *In re Estate of Elliott* (1975), 33 Ill. App. 3d 1046, 339 N.E.2d 378, is authority for holding that the decision in *Montgomery* is limited to Totten trusts only. They cite the court's language:

> "We read *Montgomery* to relate only to Totten Trusts, and not to other types of *inter vivos* trusts." 33 Ill. App. 3d 1046, 1049, 339 N.E.2d 378, 380.

However, this dicta must be read in the context of the entire opinion. The court in *Elliott* considered a claim to a statutory share by the surviving spouse to an interest her husband had as beneficiary in two land trusts which he held in joint tenancy with right of survivorship with another. The court went on to distinguish the *Montgomery* situation from the case before it. We find that every point of distinction between *Montgomery* and *Elliott* fails between *Montgomery* and the case at bar. In *Elliott*, decedent had appointed a third party as trustee as compared to *Montgomery* where the decedent appointed herself as trustee. In the instant case decedent declared herself trustee. In *Elliott*, the decedent parted with an interest during life because he entered into a joint tenancy with the respondent where a vested beneficial interest passed immediately. In *Montgomery* and in the instant case, the decedent parted with nothing during her lifetime. Finally, in *Elliott*, the decedent amply provided for his wife by will which she did not renounce, while in *Montgomery* and in the instant case, the decedent provided virtually nothing for her surviving spouse. The court in *Elliott* further stated:

> "The decision in *Montgomery* setting aside the Totten Trust was reached in order to protect the statutory share of a surviving spouse. That holding should, therefore, be applied only in

situations where a surviving spouse is attacking an *inter vivos* trust in order to claim his or her statutory share." 33 Ill. App. 3d 1046, 1049, 339 N.E.2d 378, 380.

We find such a situation to be present here, and thus hold that under *Montgomery*, the Johnson trust must be set aside insofar as it operates to defeat the statutory rights of plaintiff.

We further mention that, notwithstanding the applicability of *Montgomery v. Michaels*, we find that plaintiff has made out a *prima facie* case under the doctrine of *Rose v. St. Louis Union Trust Co.* as well. In considering the equities involved in the present case, we find that they weigh in plaintiff's favor. The factors which militate most strongly against the trust is the fact that decedent gave nothing away before she died and virtually excluded plaintiff from sharing in her wealth upon her death.

Notwithstanding defendants' contention that the two approaches signified by *Montgomery* and *Rose* appear to be mutually exclusive, the two cases are in fact compatible. *Rose* involved a vested joint tenancy interest in a land trust while *Montgomery* involved a fully revocable trust. The fact that a property interest is vested, even though it is an interest in a revocable trust, demonstrates that the settlor-grantor has parted with some degree of control over the trust assets during his or her lifetime. Conversely, retaining an unlimited power of revocation (*Montgomery*) illustrates that the settlor has not relinquished his control, thereby lessening the requirement to show intent.

## IV

The relevant statutory provisions (Ill. Rev. Stat. 1971, ch. 3, pars. 16, 16a, 17) embody the legislative policy of guaranteeing the surviving spouse a minimal share in the estate of a decedent. This legislative proscription against the complete disinheritance of the surviving spouse is deeply rooted in our legal system. In essence, it is a continuance of the legal duty of support between partners to a marriage. It is designed to prevent a surviving spouse from being left destitute where the deceased spouse has assets which could prevent such a result. The pervasiveness of this policy is reflected by the fact that our examination has failed to reveal a single jurisdiction in the United States in which a comparable statute is not in effect.

The control of the transmission of wealth upon death has become an increasingly sophisticated process in our modern society. Encouraged largely by our complex and often rapidly changing tax laws, the traditional testamentary disposition has been augmented by an ever expanding variety of trusts and other devices. Such other legitimate concerns as a desire to retain enjoyment of property without management responsibility, avoidance of probate, and making contingent provisions

for old age or infirmity as alternatives to conservatorship have all contributed to the usage and development of trusts. Trusts are thus often used as substitutes for a testamentary disposition.

■■ We hold that a trust may not be permitted to defeat the marital rights of a settlor's surviving spouse where the settlor effectively retained ultimate control of the trust assets. To do so would defeat the purposes of the statute and frustrate the fundamental public policy which it embodies. The disinheritance of a surviving spouse could be accomplished by merely changing the document controlling the devolution of property on death from a will to a trust. This would permit a decedent to do by indirect means that which cannot be done directly. This court will not so exalt form over substance.

The applicable statutory provisions preclude a decedent from depriving a surviving spouse of a portion of the estate by attempted testamentary dispositions to the detriment of the surviving spouse. The courts have been willing to relax this policy only where the decedent has disposed of an ownership interest in his property during his lifetime. As stated by the court in *Tomas v. Svoboda* (1976), 39 Ill. App. 3d 394, 404, 349 N.E.2d 668, 677:

> "To summarize our holding: the general rule is that a spouse may dispose of his or her own property during his or her lifetime by gift to another and thereby deprive the other spouse (who then proves to be the surviving spouse) of what would otherwise have been his or her statutory marital right in the subject matter of the gift. But the said gift must be real, and not a sham or merely colorable and therefore fraudulent transfer of title; there must be a legally effective delivery made with a present donative intent. The donor-spouse may reserve a life estate in the property given, in which event the precise subject matter of the gift is the future fee interest in the said property; but, where the donor-spouse does so, his or her present donative intent is subject to special scrutiny to assure that it was not a mere testamentary donative intent.

> If the gift by the donor-spouse is real, the existence of a co-intent on his or her part thereby to deprive the other spouse (who then proves to be the surviving spouse) of what would otherwise have been his or her statutory marital right in the property given is irrelevant, and is not a fraud in law on the said statutory marital right."

In such cases it becomes necessary to delve into questions of intent because there remains a possibility that the settlor had an intent other than to defeat the marital rights of his spouse.

When, as in the case at bar, the settlor does not effectively relinquish any incidents of ownership during his lifetime, and then excludes the

spouse upon his death, possible inquiries concerning the settlor's intent are unnecessary. (See *Newman v. Dore* (1937), 275 N.Y. 371, 9 N.E.2d 966.) The result is to exclude the spouse and motive is irrelevant. Without the mitigating factor of parting with something during life, the statutory policy predominates. *Montgomery v. Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465; *Smith v. Northern Trust Co.* (1944), 322 Ill. App. 168, 54 N.E.2d 75.

The present case falls in line with those cases where intent is irrelevant because the decedent failed to part with anything during her life, and thus we find *Montgomery* rather than *Rose* to be controlling. (See *Smith v. Northern Trust Co.* (1944), 322 Ill. App. 168, 54 N.E.2d 75.) Virtually every case cited by defendants, where the court has inquired into intent, involved situations where the settlor parted with an immediate interest during life and are thus distinguishable. See *Rose v. St. Louis Trust Co.* (1969), 43 Ill. 2d 312, 253 N.E.2d 417 (irrevocable trust); *Toman v. Svoboda* (1976), 39 Ill. App. 3d 394, 349 N.E.2d 668 (joint tenancy); *Levites v. Levites* (1960), 27 Ill. App. 2d 274, 169 N.E.2d 574 (United States savings bonds); *Holmes v. Mims* (1953), 1 Ill. 2d 274, 115 N.E.2d 790 (joint tenancy); *Hoeffner v. Hoeffner* (1945), 389 Ill. 253, 59 N.E.2d 684 (joint tenancy).

## V

■■ Having concluded that plaintiff may maintain his cause of action, it necessarily follows that the trial court's judgment assessing attorneys' fees and expenses against plaintiff as a sanction under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) is unwarranted. That portion of the trial court's judgment, assessing these matters against plaintiff, must also be reversed.

The question remains concerning the scope of relief to be afforded plaintiff at this time. The trial court initially expressed the view that, should plaintiff be entitled to any of decedent's assets, the property must be distributed through her estate. This view was expressed in *Montgomery v. Michaels*, which also intimated that other claims could be made against the estate assets. 54 Ill. 2d 532, 538-539.

Accordingly, we direct the trial court to enjoin dispersal of the trust assets until such time as an estate may be opened. Thereafter, the trust assets may become part of the estate and distributed in accordance with *Montgomery v. Michaels*.

Judgment reversed; cause remanded with directions.

DIERINGER, P. J., and ROMITI, J., concur.